ANDRÉ BIROTTE JR.
United States Attorney
LEON W. WEIDMAN
Assistant United States Attorney
Chief, Civil Division
RUSSELL W. CHITTENDEN
Assistant United States Attorney
California State Bar No. 112613
Room 7516, Federal Building
300 North Los Angeles Street
Los Angeles, California 90012
Telephone: (213) 894-2444
Facsimile: (213) 894-7819
Email: russell.chittenden@usdoj.gov

Attorneys for Federal Defendants
Timothy F. Geithner, United States
Secretary of the Treasury and
The Federal Housing Finance Agency

FILED
CLERK, U.S. DISTRICT COURT
MAR 14 2013
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MARSHALL DENNIS SILVERS, an individual,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, NATIONAL ASSOCIATION, a nationally chartered bank; WACHOVIA MORTGAGE CO.; CALIFORNIA RECONVEYANCE COMPANY, an unknown entity; TIMOTHY F. GEITHNER, as United States Secretary of the Treasury; THE FEDERAL HOUSING FINANCE AGENCY, as conservator for the Federal National Mortgage Association; and DOES 1 through 50, inclusive, | NO. CV13-01854(PA(SHx)<br><br>NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT BY FEDERAL DEFENDANTS<br><br>[28 U.S.C. § 1442] |

TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:

Pursuant to the provisions of 28 U.S.C. § 1442, federal defendants Timothy F. Geithner, United States Secretary of the Treasury ("Treasury") and the Federal Housing Finance Agency ("FHFA," collectively the "federal defendants") hereby remove the above-entitled action from the Superior Court of the State of California for the County of Los Angeles to this Honorable Court. The grounds for the removal are as follows:

1. On or about January 2, 2013, plaintiff Marshall Dennis Silvers ("plaintiff") filed a Complaint in the Superior Court of the State of California for the County of Los Angeles, Case No. LC099393. The federal defendants are among the named defendants.

2. The first date that the federal defendants, or either of them, received a summons and the Complaint was on or after February 14, 2013.

3. Copies of all process, pleadings, and other documents received by the federal defendants in this action are attached hereto as Exhibit "A."

4. The above-described action is one which may be removed to this Court pursuant to 28 U.S.C. § 1442(a)(1) because the federal defendants are officers and agencies of the United States within the meaning 28 U.S.C. § 1442(a)(1) which were, at all times material to the complaint herein, acting under the color of their office and agency. Such removal is a matter of right for the federal officer or agency which has been sued. Willingham v. Morgan, 395 U.S. 402, 406, 90 S.Ct. 1813, 1815, 23 L.Ed.2d 396, 401 (1969). Removal by the federal defendants is effective as to the entire action, including the non-federal portions of the case. Murphy v. Kodz, 351 F.2d 163, 167 (9th Cir. 1965). A

///

federal defense to this action exists in that, inter alia, the federal defendants are protected under the principle of sovereign immunity from this action.

DATED: March 14, 2013

ANDRÉ BIROTTE JR.
United States Attorney
LEON W. WEIDMAN
Assistant United States Attorney
Chief, Civil Division

RUSSELL W. CHITTENDEN
Assistant United States Attorney

Attorneys for Federal Defendants
Timothy F. Geithner, United States
Secretary of the Treasury and
The Federal Housing Finance Agency

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
MARSHALL D. SILVERS
5442 CREBS AVENUE
TARZANA CA 91356

TELEPHONE NO.: FAX NO.:
ATTORNEY FOR (Name): PETITIONER IN PRO PER

FOR COURT USE ONLY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 6230 SYLMAR AVENUE
MAILING ADDRESS: SAME AS ABOVE
CITY AND ZIP CODE: VAN NUYS CA 91401
BRANCH NAME: NORTHWEST DISTRICT

CASE NAME:
SILVERS vs. WELLS FARGO BANK,NATIONAL ASSOCIATION.etc

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter [ ] Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | LC099393<br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [✓] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition (not specified above) (43)

2. This case [ ] is [✓] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought (check all that apply): a.[✓] monetary b.[✓] nonmonetary; declaratory or injunctive relief c.[ ] punitive
4. Number of causes of action (specify): TEN
5. This case [ ] is [✓] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: 1/2/2013
MARSHALL D. SILVERS
(TYPE OR PRINT NAME) (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.



Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

CIVIL CASE COVER SHEET

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov



EXHIBIT A

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
- Auto (22)–Personal Injury/Property Damage/Wrongful Death
- Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
- Asbestos (04)
  - Asbestos Property Damage
  - Asbestos Personal Injury/ Wrongful Death
- Product Liability *(not asbestos or toxic/environmental)* (24)
- Medical Malpractice (45)
  - Medical Malpractice– Physicians & Surgeons
  - Other Professional Health Care Malpractice
- Other PI/PD/WD (23)
  - Premises Liability (e.g., slip and fall)
  - Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  - Intentional Infliction of Emotional Distress
  - Negligent Infliction of Emotional Distress
  - Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
- Business Tort/Unfair Business Practice (07)
- Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
- Defamation (e.g., slander, libel) (13)
- Fraud (16)
- Intellectual Property (19)
- Professional Negligence (25)
  - Legal Malpractice
  - Other Professional Malpractice *(not medical or legal)*
- Other Non-PI/PD/WD Tort (35)

**Employment**
- Wrongful Termination (36)
- Other Employment (15)

**Contract**
- Breach of Contract/Warranty (06)
  - Breach of Rental/Lease
    - Contract *(not unlawful detainer or wrongful eviction)*
  - Contract/Warranty Breach–Seller
    - Plaintiff *(not fraud or negligence)*
  - Negligent Breach of Contract/ Warranty
  - Other Breach of Contract/Warranty
- Collections (e.g., money owed, open book accounts) (09)
  - Collection Case–Seller Plaintiff
  - Other Promissory Note/Collections Case
- Insurance Coverage *(not provisionally complex)* (18)
  - Auto Subrogation
  - Other Coverage
- Other Contract (37)
  - Contractual Fraud
  - Other Contract Dispute

**Real Property**
- Eminent Domain/Inverse Condemnation (14)
- Wrongful Eviction (33)
- Other Real Property (e.g., quiet title) (26)
  - Writ of Possession of Real Property
  - Mortgage Foreclosure
  - Quiet Title
  - Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
- Asset Forfeiture (05)
- Petition Re: Arbitration Award (11)
- Writ of Mandate (02)
  - Writ–Administrative Mandamus
  - Writ–Mandamus on Limited Court Case Matter
  - Writ–Other Limited Court Case Review
- Other Judicial Review (39)
  - Review of Health Officer Order
  - Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
- Antitrust/Trade Regulation (03)
- Construction Defect (10)
- Claims Involving Mass Tort (40)
- Securities Litigation (28)
- Environmental/Toxic Tort (30)
- Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
- Enforcement of Judgment (20)
  - Abstract of Judgment (Out of County)
  - Confession of Judgment *(non-domestic relations)*
  - Sister State Judgment
  - Administrative Agency Award *(not unpaid taxes)*
  - Petition/Certification of Entry of Judgment on Unpaid Taxes
  - Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
- RICO (27)
- Other Complaint *(not specified above)* (42)
  - Declaratory Relief Only
  - Injunctive Relief Only *(non-harassment)*
  - Mechanics Lien
  - Other Commercial Complaint Case *(non-tort/non-complex)*
  - Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
- Partnership and Corporate Governance (21)
- Other Petition *(not specified above)* (43)
  - Civil Harassment
  - Workplace Violence
  - Elder/Dependent Adult Abuse
  - Election Contest
  - Petition for Name Change
  - Petition for Relief From Late Claim
  - Other Civil Petition

| SHORT TITLE: Silvers vs. WELLS FARGO BANK,NATIONAL ASSOCIATION,etc | CASE NUMBER LC099393 |
|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES CLASS ACTION? ☐ YES LIMITED CASE? ☐ YES TIME ESTIMATED FOR TRIAL 3 ☐ HOURS/ ☑ DAYS

**Item II.** Indicate the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check <u>one</u> Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

**Applicable Reasons for Choosing Courthouse Location (see Column C below)**

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | ☐ A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| Auto Tort | Uninsured Motorist (46) | ☐ A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| Other Personal Injury/ Property Damage/ Wrongful Death Tort | Asbestos (04) | ☐ A6070 Asbestos Property Damage<br>☐ A7221 Asbestos - Personal Injury/Wrongful Death | 2.<br>2. |
| | Product Liability (24) | ☐ A7260 Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210 Medical Malpractice - Physicians & Surgeons<br>☐ A7240 Other Professional Health Care Malpractice | 1., 4.<br>1., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250 Premises Liability (e.g., slip and fall)<br>☐ A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.)<br>☐ A7270 Intentional Infliction of Emotional Distress<br>☐ A7220 Other Personal Injury/Property Damage/Wrongful Death | 1., 4.<br>1., 4.<br>1., 3.<br>1., 4. |

| SHORT TITLE: Silvers vs. WELLS FARGO BANK,NATIONAL ASSOCIATION,etc | CASE NUMBER |
|---|---|

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| Non-Personal Injury/ Property Damage/ Wrongful Death Tort | Business Tort (07) | ☐ A6029 Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| | Civil Rights (08) | ☐ A6005 Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010 Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013 Fraud (no contract) | 1., 2., 3. |
| | Professional Negligence (25) | ☐ A6017 Legal Malpractice<br>☐ A6050 Other Professional Malpractice (not medical or legal) | 1., 2., 3.<br>1., 2., 3. |
| | Other (35) | ☐ A6025 Other Non-Personal Injury/Property Damage tort | 2.,3. |
| Employment | Wrongful Termination (36) | ☐ A6037 Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024 Other Employment Complaint Case<br>☐ A6109 Labor Commissioner Appeals | 1., 2., 3.<br>10. |
| Contract | Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction)<br>☐ A6008 Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence)<br>☐ A6019 Negligent Breach of Contract/Warranty (no fraud)<br>☐ A6028 Other Breach of Contract/Warranty (not fraud or negligence) | 2., 5.<br>2., 5.<br>1., 2., 5.<br>1., 2., 5. |
| | Collections (09) | ☐ A6002 Collections Case-Seller Plaintiff<br>☐ A6012 Other Promissory Note/Collections Case | 2., 5., 6.<br>2., 5. |
| | Insurance Coverage (18) | ☐ A6015 Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009 Contractual Fraud<br>☐ A6031 Tortious Interference<br>☐ A6027 Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 5.<br>1., 2., 3., 5.<br>1., 2., 3., 8. |
| Real Property | Eminent Domain/Inverse Condemnation (14) | ☐ A7300 Eminent Domain/Condemnation Number of parcels______ | 2. |
| | Wrongful Eviction (33) | ☐ A6023 Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☒ A6018 Mortgage Foreclosure<br>☐ A6032 Quiet Title<br>☐ A6060 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6.<br>2., 6.<br>2., 6. |
| Unlawful Detainer | Unlawful Detainer-Commercial (31) | ☐ A6021 Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020 Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022 Unlawful Detainer-Drugs | 2., 6. |

| SHORT TITLE: Silvers vs. WELLS FARGO BANK,NATIONAL ASSOCIATION,etc | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet Category No. | B<br>Type of Action (Check only one) | C<br>Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| Judicial Review | Asset Forfeiture (05) | ☐ A6108 Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115 Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151 Writ - Administrative Mandamus<br>☐ A6152 Writ - Mandamus on Limited Court Case Matter<br>☐ A6153 Writ - Other Limited Court Case Review | 2., 8.<br>2.<br>2. |
| | Other Judicial Review (39) | ☐ A6150 Other Writ /Judicial Review | 2., 8. |
| Provisionally Complex Litigation | Antitrust/Trade Regulation (03) | ☐ A6003 Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007 Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006 Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035 Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort Environmental (30) | ☐ A6036 Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014 Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| Enforcement of Judgment | Enforcement of Judgment (20) | ☐ A6141 Sister State Judgment<br>☐ A6160 Abstract of Judgment<br>☐ A6107 Confession of Judgment (non-domestic relations)<br>☐ A6140 Administrative Agency Award (not unpaid taxes)<br>☐ A6114 Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112 Other Enforcement of Judgment Case | 2., 9.<br>2., 6.<br>2., 9.<br>2., 8.<br>2., 8.<br>2., 8., 9. |
| Miscellaneous Civil Complaints | RICO (27) | ☐ A6033 Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030 Declaratory Relief Only<br>☐ A6040 Injunctive Relief Only (not domestic/harassment)<br>☐ A6011 Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000 Other Civil Complaint (non-tort/non-complex) | 1., 2., 8.<br>2., 8.<br>1., 2., 8.<br>1., 2., 8. |
| Miscellaneous Civil Petitions | Partnership Corporation Governance (21) | ☐ A6113 Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121 Civil Harassment<br>☐ A6123 Workplace Harassment<br>☐ A6124 Elder/Dependent Adult Abuse Case<br>☐ A6190 Election Contest<br>☐ A6110 Petition for Change of Name<br>☐ A6170 Petition for Relief from Late Claim Law<br>☐ A6100 Other Civil Petition | 2., 3., 9.<br>2., 3., 9.<br>2., 3., 9.<br>2.<br>2., 7.<br>2., 3., 4., 8.<br>2., 9. |

| SHORT TITLE: Silvers vs. WELLS FARGO BANK,NATIONAL ASSOCIATION,etc | CASE NUMBER |
|---|---|

**Item III.** Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., Step 3 on Page 1, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case. ☐1. ☐2. ☐3. ☐4. ☐5. ☑6. ☐7. ☐8. ☐9. ☐10. | | | ADDRESS: 5442 CREBS AVENUE |
|---|---|---|---|
| CITY: TARZANA | STATE: CA | ZIP CODE: 91356 | |

**Item IV.** *Declaration of Assignment:* I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the VAN NUYS courthouse in the NORTHWEST District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: 1/2/2013

(SIGNATURE OF ATTORNEY/FILING PARTY)

PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:

1. Original Complaint or Petition.
2. If filing a Complaint, a completed Summons form for issuance by the Clerk.
3. Civil Case Cover Sheet, Judicial Council form CM-010.
4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).
5. Payment in full of the filing fee, unless fees have been waived.
6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.
7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

| ...JPER... COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
| --- | --- |
| ...URTHOUSE ADDRESS: 6230 Sylmar Avenue, Van Nuys, CA 91401 | |
| ...INTIFF: | |
| ...FENDANT: | |
| NOTICE OF:<br>...TATUS CONFERENCE/ OSC RE DISMISSAL and<br>...ASE MANAGEMENT CONFERENCE | CASE NUMBER:<br>LC099393 |

...THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:

...J ARE HEREBY NOTIFIED THAT THE ABOVE MATTER HAS BEEN ASSIGNED FOR ALL PURPOSES, ...LUDING TRIAL, TO JUDGE **JAMES A. KADDO**, PRESIDING IN DEPARTMENT **NW-I**

...are Ordered to ser ve this notice of hearing to all parties/attorneys of record forthwith and serve a copy of this notice to all parties to the ...n within 60 days of service of this notice. The Court Orders that except as otherwise Ordered in writing, all attorneys (or unrepresented ...es as applicable) appear at all scheduled hearings. All parties/attorneys of record are ordered to meet and confer about the matters to be ...issed no later than 30 days before the Case Management Conference (which shall take place approximately 140 days from filing of the ...plaint). The complaint must be served on all named defendants and proofs of service must be filed with the Court within 60 days after the ...g of the complaint. If all named defendants have not been served and proofs filed before the 60 days have elapsed, application must have ... made with Court to extend or otherwise modify rules of service Rule CRC 3.110 (b),(c) and (e).

...initial Status Conference ("ISC") has been scheduled at the courthouse address shown above on:

| Date: 4/8/13 | Time: 8:30AM | Dept: NW I | Room: 520 |
| --- | --- | --- | --- |

...Case Management Conference ("CMC") has been scheduled at the courthouse address shown above on:

| Date: 5/16/13 | Time: 8:30AM | Dept: NW I | Room: 520 |
| --- | --- | --- | --- |

...complaint has been served and answered prior to the ISC, the ISC may serve as the CMC in which case the Court will likely vacate the ...date. A completed CMC Statement must be filed by all parties directly in Dept. "I" at least 5 calendar days prior to each status conference. ...Rule 3.724 and Rule 3.727 require that attorneys attending the conferences be familiar with the case and be fully prepared to participate ...ively in all case management conferences.

...ISC and/or CMC the Court may make pretrial orders including the following: establishing a discovery schedule; referring the case to ...ative Dispute Resolution (ADR); reclassifying the case; dismissing fictitious/unnamed defendants; setting subsequent conferences and the ...ate; or other Orders to achieve the goals of the Trial Court Delay Reduction Act (GC68600 et. seq.)

...e is hereby given that if you do not file a case management conference statement or if the trial attorney should fail to appear and/or fail to ...ively participate at any such conference, the Court may impose sanctions (including dismissal of the case, striking of the answer and/or ...ent of money), pursuant to LASC Local Rules Chapter 3, CCP Sections 177.5, 583.150, 583.360 and 583.420, GC Section 68608 (b) and ...erwise authorized by law.

*...CE TO DEFENDANT: THE SETTING OF ANY CASE MANAGEMENT CONFERENCES DO NOT EXEMPT YOU FROM ...IG A RESPONSIVE PLEADING AS REQUIRED BY LAW.*

...2013 JOHN A. CLARKE

...e ______

Judicial Officer: *JAMES A. KADDO*

CIV NOTICE OF STATUS AND CASE MANAGEMENT CONFERENCES



Revised 12-8-2011



EXHIBIT A

# SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF LOS ANGELES

| | CASE NUMBER. LC099393 | FILE STAMP |
|---|---|---|
| PLAINTIFF(S)/PETITIONER(S) | NOTICE OF CASE ASSIGNMENT | |
| DEFENDANT(S)/RESPONDENT(S) | | |

TO THE PLAINTIFF(S) AND THE ATTORNEY OF RECORD:

YOU ARE HEREBY NOTIFIED THAT THE ABOVE MATTER HAS BEEN ASSIGNED FOR ALL PURPOSES, INCLUDING TRIAL, TO *JUDGE JAMES A. KADDO*, PRESIDING IN *DEPARTMENT NW-I,* IN THE SUPERIOR COURT, LOCATED AT ***6230 SYLMAR AVENUE, VAN NUYS, CA 91401***

Richard H Kirschner

Hon. Richard Kirschner, Supervising Judge

## CERTIFICATE OF SERVICE

I am not a party to the within action, and I certify that I personally served a true copy of the above notice to the plaintiff or his attorney of record by delivering the copy to the designated representative/attorney service at the time of filing of the original complaint.

I am not a party to the within action, and I certify that I personally served a true copy of the above notice to the plaintiff or his attorney of record by delivering the copy in person this date to counsel for plaintiff or plaintiff in pro per.

I am not a party to the within action, and I certify that I served a true copy of the above notice to the plaintiff or his attorney of record by depositing in the United States mail at the courthouse in Van Nuys, California, one copy of the original filed herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid.

[ ] [ ]

[ ] [ ]

JOHN A. CLARKE, Executive Officer/Clerk
of the Superior Court/County of Los Angeles

A CORPORATION MUST BE REPRESENTED BY A LICENSED CALIFORNIA ATTORNEY

Date: ______________ By: N. Whitright, Deputy

Marshall D. Silvers
Pro Se
**5442 Crebs Ave.**
**Tarzana, Ca. 91356**
dennysilvers@yahoo.com
Attorneys for Plaintiff,
Marshall D. Silvers

LC 099393
LA. Superior Court
Jan 2, 2013

**LOS ANGELES SUPERIOR COURT**

**COUNTY OF LOS ANGELES, STATE OF CALIFORNIA**

**NORTHWEST DISTRICT, VAN NUYS COURTHOUSE**

| | |
|---|---|
| Marshall D. Silvers, an individual;<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO BANK, NATIONAL ASSOCIATION, a nationally chartered bank; Wachovia Mortgage Co.; CALIFORNIA RECONVEYANCE COMPANY, an unknown entity, TIMOTHY F. GEITHNER, as United States Secretary of the Treasury; THE FEDERAL HOUSING FINANCE AGENCY, as conservator for the Federal National Mortgage Association; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No: LC099393<br><br>**PLAINTIFF MARSHALL D. SILVERS**<br><br>(TRIAL BY JURY IS DEMANDED) |

Plaintiff Marshall D. Silvers alleges the following:

## I. INTRODUCTION

1. Plaintiff, Marshall D. Silvers is the type of person that the federal government's foreclosure prevention program was intended to help. Plaintiff's primary household income, at all relevant times, is and was provided by plaintiff Silvers's self-employment. Mr. Silver's income was substantially reduced through much of 2009 through 2011. Because of his reduction in income, Plaintiff fell behind on his monthly mortgage payments. Mr. Silver's income has partially improved, but a loan modification is needed to get current and make the first mortgage loan sustainable.

2. Marshall D. Silvers is eligible for the federal government's Home Affordable Modification Program ("HAMP") and the California State Modification Program (California Civil Code § 2923.53, Lender exemption affidavit thereto; hereinafter "Section 2923.53"), but he has been denied a modification, or even access to the program. Mr. Silvers, on behalf of himself, repeatedly inquired of the servicer of their first priority home loan whether a modification through HAMP was available, and in response was repeatedly advised that it was first not available by Wachovia Bank. Mr. Silver's constitutional right to procedural due process has been violated.

3. HAMP is part of a federal government's program to prevent foreclosures. California Civil Code § 2923.53 (including the Lender's affidavit of exemption thereto) is part of the California State Government's modification program to prevent foreclosures. Both the enabling legislation and the State and federal government's own implementing guidelines make it clear that eligible and qualified homeowners "shall" receive a loan modification, Thus creating legal entitlements for homeowners facing foreclosure. Yet, the government has denied Mr. Silvers the most fundamental due process protections: notice of the basis for a decision, a meaningful opportunity to be heard, an opportunity to have a decision adverse to Plaintiff independently and objectively reviewed without bias, and an opportunity to appeal.





EXHIBIT A

4. HAMP and its California corollary, Section 2923.53 does not require that homeowners be given any notice of a denial at all. The servicer of Plaintiff's first priority home loan orally advised Plaintiff that the HAMP program was not available for their loan, stating that the investors are not participating [in HAMP], Plaintiff has not been given any notice of denial or the reasons this therefore. HAMP is complex, and the lack of transparency prevents Marshall D. Silvers from correcting errors or misinformation. Lack of an opportunity to have a decision adverse to Plaintiff independently and objectively reviewed without bias, and an opportunity to appeal, makes it even more difficult to access the benefits.

## II. JURISDICTION AND VENUE

5. Jurisdiction is conferred on this Court by 28 U.S.C. § 1334 in that this proceeding arises under the laws of the United States Constitution and the Truth in Lending Act, 15 U.S.C. § 1601 ("Act") to enforce the Plaintiff's right to rescind a consumer credit transaction, to void the Defendants' security interest in the Plaintiff's home, and to recover statutory damages, reasonable attorney's fees and costs by reason of the Defendant's violations of the Act and Regulation Z, 12 C.F.R. § 226 ("Regulation Z").

6. Plaintiff's action for declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

7. This Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

## II. PARTIES

8. Plaintiff, Marshall D. Silvers, ("Plaintiff" or "SILVERS"), is, and at all times mentioned and relevant herein, the owner of a residence located at 5846 Lasaine Ave, Encino, Ca. 91316 (hereinafter subject "Property").

9. Upon information and belief, Defendant Wells Fargo Bank, an unknown entity, a successor or assignee in interest (hereinafter "Wells Fargo Bank" or "Lender" or "Servicer") is, and at all times mentioned and relevant herein a corporation, doing business in the County of Los Angeles, State of California. It is understood that Wells Fargo Bank, NA (Wachovia

Mortgage) acted in the capacity of "Servicer" and/or "Lender" of Plaintiff's "Loan" on his Subject Property. Further discovery forthcoming will determine said entities exact roles.

10. Upon information and belief, Defendant Wachovia Bank, N.A. an unknown entity, a successor or assignee in interest (hereinafter "Wells Fargo Bank" or "Lender" or "Servicer") is, and at all times mentioned and relevant herein, doing business in the County of Los Angeles, State of California. Wells Fargo Bank, NA here in after operated as a successor in interest or assignee to Wachovia Mortgage, NA.

11. On information and belief, Index West. ("Trustee " or "Index West") is and was at all times herein relevant, doing business in the County of Los Angeles, State of California. At all times mention herein, Trustee was practicing Trustee services for Lender and/or Servicer, doing business in the County of Los Angeles.

12. On information and belief, TIMOTHY F. GEITHNER, as United States Secretary of the Treasury, ("Geithner") is and was at all times herein relevant, operating in the County of Los Angeles, State of California.

13. On information and belief, THE FEDERAL HOUSING FINANCE AGENCY, as conservator for the Federal National Mortgage Association, ("FHFA") is and was at all times herein relevant, operating in the County of Los Angeles, State of California.

14. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants DOES 1 through 50, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff are informed and believe, and on that basis alleges, that each of the Defendants designated herein as a DOE is responsible in some manner, way, form and to some extent for the events and occurrences referred to herein, and for the damages resulting to Plaintiff. At such times as Plaintiff learn the true name and capacity of any Defendant named as a DOE herein, Plaintiff will seek leave of court to amend their complaint to identify said Defendant, and include accompanying charging allegations.

15. Plaintiff is informed and believes, and thereon allege, that at all times mentioned and relevant herein, each and every Defendant, including said fictitiously named Defendants, was the principal, agent, master, servant, co-venturers, employer or employee of each and every other Defendant, and at all times relevant herein was acting in such capacity. Plaintiff further allege that the acts performed by them as agents, principals, servants and employees were performed within the course and scope of their authority and employment. Each of the Defendants is in some way responsible for the damages sustained by Plaintiff.

16. When this complaint references any act of any Defendant or Defendants, such allegation shall be deemed to mean the act of those Defendants named in the particular cause of action and each of them acting, individually, jointly and severally.

## III. PLAINTIFF'S DEMAND FOR TRIAL BY JURY

17. Plaintiff Marshall D. Silvers hereby demands that this action be tried therefore a jury.

## IV. FACTS COMMON TO ALL CAUSES OF ACTION

18. Plaintiff, Marshall D. Silvers, ("Plaintiff" or "Silvers"), is, and at all times mentioned and relevant herein, the owner of a residence located at 5846 Lasaine Ave., Encino, Ca. 91316, (hereinafter subject "Property"). (hereinafter subject "Property").

19. On or about October 19, 2006, said Note and related First Deed of Trust ("Loan") on Subject Property was originated with lender Wachovia Mortgage Co.

20. Wells Fargo Bank, NA operated as a successor in interest or assignee to Wachovia Mortgage Co. The chain of title on the Subject Property reveals that Wacovia Mortgage Co., failed to record an "Assignment of Deed of Trust" regarding its successor in interest to Wells Fargo Bank, NA status.

21. On or about April 10, 2010, Trustee, at the direction of the Lender, filed a Notice of Default on subject Loan, regarding subject Property

22. On or about November 13, 2010, Trustee, at the direction of the Lender, filed a Notice of Trustee Sale on subject Loan, regarding subject Property. Thereafter, Trustee, at the direction of the Lender, scheduled a Trustee foreclosure sale of subject Property.

23. On information and belief, defendants, and each of them illegally caused a NOTICE OF DEFAULT and ELECTION TO SELL (hereinafter, "NOD") on plaintiffs Subject Property, to be recorded in the County Records.' Subsequently, a Trustee's Sale will be conducted on the Plaintiffs Subject Property.

24. Defendants, as ostensible Beneficiary of the Plaintiff's Promissory Note has brought a foreclosure proceeding against the Subject Property, under false pretenses, asserting said Defendant Wells Fargo Bank to be the owner of and holder of the underlying "Note" and mortgage when in fact they are not; and, without complying with California law governing Non-judicial foreclosure.

25. Plaintiff is a "debtor" as defined by the Rosenthal Act, California Civil Code 1788.2(h).

26. Defendants are engaged in the collection of debts from consumers using the mail and telephone.

27. Defendants regularly attempt to collect consumer debts alleged to be due to another.

28. Defendants are "debt collectors" as defined by the Rosenthal Act, California Civil Code Section 1788.2(c).

29. The purported debt which Defendants attempted to collect from Plaintiff was a "consumer debt" as defined by the Rosenthal Act, California Civil Code Section 1788.2(f).

30. The representations of the Defendants, and each of them, in the NOD to sell the Subject Property; and any notice to sell the Subject Property without the requisite legal title, while falsely stating that it had such title; and, failure to comply with California Civil Code Section 2923.5; 2934(a) (4); 2934(b); 2934(e); and 2923.52(a) constituted a "false, deceptive or misleading representation or means in connection with the collection of a debt" in violation of Rosenthal Fair Debt Collection Practice Act.

31. None of foreclosing defendants were the Beneficiary under and pursuant to a Deed of trust executed by Plaintiff as Trust or relative to their Subject Property. This was so when the NOD was recorded, and was so when, and if, Notice to Sell is recorded.

32. There is no recorded evidence, nor has Defendants, Wells Fargo Bank, or any of the Foreclosing Parties produced any evidence of the delivery and endorsement of the Promissory Note to Wells Fargo Bank. ( California Commercial Code §§ 3301, 3303). Moreover, there is no recorded evidence that 50% of the beneficial owners of the mortgage loans, held by Wells Fargo Bank, ever giving written authorization to Substitute Trustee to Foreclosure on the Plaintiffs Property.

33. INDEX WEST was never properly named as a substitute Trustee by the beneficial holders of the Mortgage Loans sold by Wachovia and/or Wells Fargo Bank to conduct a sale of Plaintiffs Real Property.

34. Defendants do not qualify as Holders In Due Course because of their Successor status and are, therefore subject to the defenses of the fraudulent conduct Wells Fargo Bank. ( California Commercial Code Sections 3302(c)3).

35. On or about June 15, 2010, Mr. Silvers' conducted a telephone conference with a Wachovia Loss Mitigation Department, who stated that borrower's loan modification application is in review, but needs updated 2009 and 2010 tax returns..

36. Plaintiff is informed and believes that the wrongful acts of Defendants include violations of federal and state law before the initiation of the Loan as well as during the servicing period of the Loan:

a. Prior to the funding of the Loan, Broker and/or Lender represented to Plaintiff that very favorable loans, loan terms and interest rates were available to him;

b. As a result, Broker, and other Defendants convinced Plaintiff to refinance the Subject Property and to take out financing for that purpose with Broker regarding the Loan;

c. Plaintiff is further informed and believes that Lender, Broker, and other Defendants knew or intended that Plaintiff receive a worse loan, and that the worse loan produced a higher commission for them because it was at a higher interest rate and subject to higher fees:

d. Plaintiff is further informed and believes that Lender, Broker and other Defendants knew or should have known that in the event of Plaintiff inability



EXHIBIT A

to perform on the Loan, prepayment penalties, commissions and other foreseeable charges to Plaintiff would constitute an additional payment stream to the benefit of Defendants.

Defendants knew or should have known that in the event of Plaintiff inability to perform on the Loan, prepayment penalties, commissions and other foreseeable charges to Plaintiff would constitute an additional payment stream to the benefit of Defendants.

37. Although Lender and Broker, and other persons made certain representations regarding the Loan, in actuality, the Loan was not as represented because among other things

a. It was at a higher interest rate than what was represented;

b. The payments were higher than the payment as represented to and agreed upon by Plaintiff;

c. There was less equity in the Subject Property than represented;

d. There was less money available to Plaintiff than represented;

e. The Loan subsequently became unaffordable for Plaintiff; and

f. Plaintiff was accordingly put into a mortgage all without Plaintiff informed consent.

38. Plaintiff is informed and believes that Defendants failed to provide Plaintiff with the proper disclosures required under federal and state law:

a. Defendants did not provide to Plaintiff a proper notice of right to cancel at the time of the transaction;

b. Defendants did not provide to Plaintiff accurate disclosures of the costs of financing, the Annual Percentage Rate ("APR"), the payment obligations, or the type of loan at the time of the transaction;

c. The settlement charges listed on the Good Faith Estimate are lower than those listed on the HUD-1;

d. Various disclosures and notices, especially with respect to rescission rights, were not provided to Plaintiff at the time the Loan was funded;

e. Defendants did not provide to Plaintiff a proper notice of right to cancel

subsequent to the time of the transaction; and

f. Defendants did not provide to Plaintiff accurate disclosures of the costs of financing, the APR, the payment obligations, or the type of loan subsequent to the time of the transaction.

39. Plaintiff is informed and believes Defendants took unfair advantage of Plaintiff because they knew Plaintiff trusted them and was susceptible to their undue influence:

a. Plaintiff was a minority home buyer.

40. Plaintiff is informed and believes that Defendants Lender, Servicer and other Defendants received Qualified Written Requests regarding the Loan from Plaintiff and failed to adequately respond to Plaintiff requests for information, which would have enabled Plaintiff an opportunity to work out the Loan.

41. Plaintiff is informed and believes that Defendants Lender, Servicer and other Defendants failed to fulfill their lawful obligations regarding servicing of the Loan.

42. Plaintiff is informed and believes that Defendants further took advantage of Plaintiff while Plaintiff made extensive efforts in good faith to resolve the disputed issues while Defendants sought to obtain information for debt collection purposes and to further exert influence over Plaintiff.

43. Furthermore, Plaintiff is informed and believes that Broker, Lender, and other Defendants and/or their agents breached their duties of care to Plaintiff by, among other things, the following:

a. Defendants indicated that Plaintiff would be able to refinance the Loan in a short period of time, when in fact this was not an option for him.

44. At the time the Loan was executed, predatory lending behavior evidenced by Defendants includes, but is not limited to, the following:

a. Kickbacks to mortgage brokers;

b. Promising specific terms such as a fixed rate loan and switching at closing;

c. Structuring loans with payments borrowers cannot afford;

d. forging signatures on loan documents (such as required disclosures);

e. Falsifying appraisals;

f. High points or padded closing costs;

g. Improper broker fees;

h. Rushed loan closing;

i. Back-dating of documents;

j. Failure to give copies of documents to homeowner at closing;

k. Loan flipping (repeated refinancing, often after high-pressure sales);

45. Furthermore, Plaintiff is informed and believes that Broker, Lender, and other Defendants and/or their agents willfully deceived Plaintiff by, among other things, the following:

a. Defendants created a note with so many different addenda, riders and disclosures that the contract was incomprehensible to a standard consumer;

b. No loan payment examples were provided.

46. Plaintiff is informed and believes that the loan securitization process has created a situation where no single entity has complete ownership of the Loan, or even sufficient authority to negotiate a workout or modification to the Loan. As a result the Originating Lender, unknown investors and one or more servicers all entered into servicing agreements with an entity that cannot speak for Loan. Servicer represented that it had the right and authority to foreclose on the Subject Property. Plaintiff is informed and believes that this representation was false because all of Servicer's and Servicer's rights regarding the Loan are derivative of rights held by unknown investors whose rights are themselves dependent on the rights of the Originating Lender and Broker who perpetrated the initiation of the Loan. Plaintiff is informed and believes that Servicer and Servicer falsely, wrongfully, and either negligently or intentionally represented to Plaintiff and to others that they had authority to service, collect, negotiate, work-out, and foreclose the Loan notwithstanding the deficiencies with the Loan.

47. Plaintiff is informed and believes that the Loan and related contracts contain

conflicting terms that are not reasonably comprehensible by a consumer, possibly including but not limited to the Note, Addenda, Trust Deed, Rider(s), TILA, Estimated Settlement Statement(s), Final Settlement Statement(s), Escrow Instruction(s), all containing complicated and in many cases contradictory terms.

48. Plaintiff relied on the representations of Broker, Lender, and other Defendants as alleged herein because Plaintiff reasonably believed that Defendants are licensed banks, real estate agencies, brokers and/or mortgage companies, and are fiduciaries of Plaintiff, owing Plaintiff duties of utmost care, loyalty, professionalism and to conduct all real estate transactions herein without violating any of the fiduciary duties owed to Plaintiff.

49. Broker, Lender, and other Defendants breached their fiduciary obligations owed to Plaintiff, were negligent, made negligent misrepresentations, intentional misrepresentations, breached their contract with Plaintiff, were professionally negligent and caused Plaintiff damages.

50. Plaintiff is informed and believes that Defendants Servicer and other Defendants purchased or otherwise acquired unknown rights and/or responsibilities relating to Plaintiff Loan from Lender at some date unknown to Plaintiff. All such rights and responsibilities depend on the rights of Lender and are meaningless and unenforceable if the rights of Lender are unenforceable.

51. Plaintiff is informed and believes that Servicer, and/or any entity that owns any rights as to the Loan, steps into the shoes of the Lender with respect to the deficiencies in the loan documents as well as the failure to provide Plaintiff with suitable disclosures and contract terms. Servicer, and/or any entity that owns any rights as to the Loan, cannot take any action on the Loan that the Originating Lender or Broker would have been prevented from taking due to the deficiencies in the Loan. Plaintiff is informed and believes that Servicer, and Servicer and/or any entity that owns any rights as to the Loan, is contractually liable for the deficiencies at the originating stage of the Loan. Servicer and Servicer are each a necessary party to this action to resolve the respective interests of the parties over the Subject Property.

52. As a proximate result of Defendants' conduct as herein alleged, Plaintiff

sustained damages, including monetary loss, medical expenses, emotional distress, loss of employment, loss of credit, loss of opportunities, attorney fees and costs, and other damages to be determined at trial. As a proximate result of Defendants' breach of duty and all other actions as alleged herein, Plaintiff has suffered severe emotional distress, mental anguish, harm, humiliation, embarrassment, and mental and physical pain and anguish, all to Plaintiff damage in an amount to be established at trial.

53. Plaintiff damages included but are not limited to excessive fees, charges, penalties and interest.

54. Each Defendant herein is responsible for the acts of other Defendants and their predecessors based on the doctrine of respondeat superior. Further, each Defendant herein is responsible for the acts of other Defendants because each Defendant negligently supervised the other Defendants and is therefore directly responsible for the acts of the other Defendants.

55. All Defendants are agents, employees and other fiduciaries of each other as set forth within. Each of the wrongful acts by Defendants against Plaintiff set forth within were done in the scope of employment. Defendants were acting as agents and employees and in the transaction of the business of the employment or agency when performing their wrongful actions. Defendants are therefore directly, jointly and severally liable to Plaintiff for the actions of Broker, Lender, Servicer, the employees of said parties, and all other Defendants as set forth within.

56. The aforementioned conduct of Defendants was an intentional misrepresentation, deceit, or concealment of a material fact known to Defendants with the intention on the part of Defendants of thereby depriving Plaintiff of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Plaintiff to a cruel and unjust hardship in conscious disregard of Plaintiff rights, so as to justify an award of exemplary and punitive damages, as well as attorney fees and costs.

57. California Civil Code Section 2954.4(b) and Plaintiff's underlying Note which incorporate California law, Wells Fargo Bank is required, for purposes of assessing late

charges, to apply monthly payments they receive to the most recent installment due, even if Plaintiff is past due for prior installments. The purpose of this requirement is to ensure that, if one payment is missed, but subsequent payments are made on time, Plaintiff is only charged a late charge for the single missed payment.

58. Wells Fargo Bank (Wachovia) does not comply with this obligation. Instead of applying all payments received to the most recent installment due, they apply payments to earlier past due installments, for which Plaintiff has already been assessed a late fee, and then also assess yet another late fee for the most recent installment, thereby generating improper and excessive late charges.

59. This conduct is unfair, fraudulent and violates California Civil Code §2954.4(b) and the underlying notes which necessarily incorporate California Civil Code §2954.4(b).

60. Cumulatively, these late fees, improperly calculated and charged by Wells Fargo Bank(Wachovia), have resulted in substantial damages to the Plaintiff.

61. Owner Plaintiff resides in the Subject Property.

62. Section 6(A) of Plaintiff's Note provides: "If the Note Holder has not received the full amount of any monthly payment by the end of Fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.0000% of the overdue payment of interest during the period when my payment is interest only, and of principal and interest after that. I will pay this late charge promptly but only once on each late payment."

63. California Civil Code §2954.4(b), which applies to loans secured by single-family, owner-occupied dwellings, states: "(b) A late charge may not be imposed on any installment which is paid or tendered in full on or before its due date, or within 10 days thereafter, even though an earlier installment or installments, or any late charge thereon, may not have been paid in full when due. For the purposes of determining whether late charges may be imposed, any payment tendered by the borrower shall be applied by the lender to the most recent installment due."

64. Thus, Section 2954.4(b) of the California Civil Code and the terms of the Note, in which this the California Civil Code is incorporated, prohibit Defendants from charging multiple late fees when only one payment of principal and interest is missed or late. In other words, these provisions are designed to prevent lenders from applying timely made payments to a previously missed or late installment so as to trigger a new late fee.

65. After loan origination, Wells Fargo Bank (Wachovia) was assigned the contractual loan servicing obligations under the Note and Deed of Trust for Plaintiff, and have serviced Plaintiff's loan at all times material hereto.

66. Wells Fargo Bank (Wachovia) is responsible for collecting loan payments, allocating and applying such payments, and accounting for such payments to the borrowers and to the note holders. Wells Fargo Bank (Wachovia) also has obligations with respect to maintaining the collateral securing the loans. Plaintiff submitted payments to Wells Fargo Bank (Wachovia) but does not control how those payments are ultimately applied by Wells Fargo Bank (Wachovia).

67. Wells Fargo Bank (Wachovia) is in a position to impose significant economic and personal duress to Plaintiff if he does not comply with Wells Fargo Bank (Wachovia) payment demands. This duress can take the form of adverse credit reporting and its consequent effect on Plaintiff's ability to obtain credit and employment, as well as the threat of collection activity and foreclosure.

68. Wells Fargo Bank (Wachovia) labels loan payment histories with multiple entries for individual transactions, using codes that are proprietary, and does not make these histories and codes readily available to the borrowers. Borrowers lack full access to the facts concerning their payment obligations.

69. Wells Fargo Bank (Wachovia) is obligated to apply payments received both before and after the due date, but before expiration of the grace period, to the most recent installment due. For example, assuming there is a 10 day grace period, if the loan is due for January I because the borrower missed the January payment, and the next full payment of principal and interest is received between February 1 and February 10, Defendants, for late

charge purposes, must apply the payment to the most recent installment due (i.e. February 1) and cannot assess a late charge for February. Similarly, if that same payment were received on January 31, or at any time between January 11 and January 31, Defendants must apply the payment to February, because the January payment is already past due and has already been assessed a late charge.

70. Civil Code Section 2954.4(b) prohibits assessing a late charge "on any installment which is paid or tendered in full on or before its due date, or within 10 days thereafter, even though an earlier installment or installments, or any late charge thereon, may not have been paid in full when due." If the January payment is past due, the February payment becomes the most recent installment due for purposes of Section 2954.4(b), and any payment made between January 11 and January 31 is a payment made "on or before" the February 1 due date.

71. Wells Fargo Bank (Wachovia) provides monthly mortgage statements to its borrowers with a payment coupon that routinely describes the "total amount due" as including the amount necessary to pay the next pending monthly installment.

72. According to Wells Fargo Bank (Wachovia)'S statements, even when the loan is delinquent, the amount of the next payment is part of the amount "due," even though the actual payment due date has not yet arrived. The statements are sent to borrowers not only after the expiration of the current month's grace period, but well before the next due date.

73. When a loan is current, Wells Fargo Bank (Wachovia) has a policy and practice of applying payments received before the due date of the next pending monthly installment to that next pending unpaid installment, which is the most recent installment due. However, if a loan is delinquent, Wells Fargo Bank (Wachovia) has a policy and practice of applying payments received before the due date of the next pending unpaid installment to a prior past due installment, thereby triggering additional late fees. This practice on delinquent loans is in violation of California Civil Code § 2954.4(b) as incorporated into the Note.

74. On multiple occasions, Mr. Silvers' made payments at the end of the month, only to have Wells Fargo Bank (Wachovia) apply such payments to earlier installments

instead of the most recent installments due, thereby triggering additional late fees.

75. In direct contravention of the California Civil Code and the underlying Note that incorporated the Code, Wells Fargo Bank (Wachovia) has charged late fees on Plaintiff's otherwise timely payments of principal and interest based on the fact that prior payments were not paid when due.

76. Plaintiff is informed and believes, and on that basis allege, that Wells Fargo Bank (Wachovia) has a pattern and practice of improperly charging late fees according to the schemes discussed above.

77. Plaintiff is informed and believes, and on that basis allege, that Wells Fargo Bank (Wachovia) engaged in the herein described practices maliciously, oppressively and/or fraudulently and that they knew their practices violated California law and their loan agreements.

78. As a result of Wells Fargo Bank (Wachovia)'s conduct, as alleged herein, Plaintiff has been damaged, including, but not limited to, overcharges of late fees in connection with Plaintiff's Loan.

**WELLS FARGO BANK, N.A. (WACHOVIA) ILLEGAL BUSINESS AND DEBT COLLECTION PRACTICES**

79. From early 2008 to September 2010, Wells Fargo Bank (Wachovia) failed to implement sound internal policies and practices in order to maintain and safeguard the integrity of the process of handling, managing, collecting, and modifying Plaintiff's Loan as a subservicer. From early 2008 to September 2010, Wells Fargo Bank (Wachovia) failed to obtain timely and accurate information Plaintiff's Loan that it subserviced and/or collected; utilized "auto-dialers" with pre-recorded messages to dial Plaintiff multiple times a day to harass Plaintiff and threaten to steal Plaintiff's Subject Property; neglected to update and/or correct its loan data in timely fashion; made inaccurate claims to Plaintiff; and engaged in a pattern and practice of unlawful, deliberately deceptive collection and servicing practices in violation of the California Rosenthal Fair Debt Collection Practices Act.

80. In its capacity as a debt collector for Plaintiff's "defaulted" Loan, Wells Fargo

Bank (Wachovia) routinely made representations to Plaintiff about his Loan, including but not limited to the name of the creditor, the unpaid principal balance, the due date, the interest rate, the monthly payment amount, the delinquency status, the availability of loss mitigation, and the amount and basis for the assessed corporate advances and fees. During early 2008 to September 2010, Wells Fargo Bank (Wachovia)routinely made these representations to Plaintiff in collection calls and notices, monthly statements, acceleration notices, payoff statements, reinstatement quotes, foreclosure filings, and bankruptcy filings without obtaining hard copies of the documents relating to the alleged debts and the complete loan information from the actual creditor, prior servicer, and/or lender. Wells Fargo Bank (Wachovia) and its employees and agents routinely make these written and oral representations to borrowers and the courts without having conducted quality control and other data integrity checks to ensure the factual accuracy of their representations relating to Plaintiff's "debts" related to his Subject Property Mortgage.

81. Wells Fargo Bank (Wachovia) routinely lacks a reasonable basis for said representations to Plaintiff, and their representations to the Court, because they fail to obtain accurate and complete information about Plaintiff's loan accounts and alleged debts. Despite indications that loan data obtained from loan servicers and loaded onto Wells Fargo Bank (Wachovia)'s servicing system was often inaccurate or unverified Wells Fargo Bank (Wachovia)has nonetheless used that data to make representations to Plaintiff about his Loan and alleged debt. As a result Wells Fargo Bank (Wachovia) has made inaccurate claims to Plaintiff and engaged in unlawful and deceptive collection and servicing practices.

82. Wells Fargo Bank (Wachovia) failed to disclose to Plaintiff in initial communications with Plaintiff that Wells Fargo Bank (Wachovia), in its capacity as a debt collector, was attempting to collect a debt and that any information obtained would be used for that purpose. In addition, Wells Fargo Bank (Wachovia) failed to send Plaintiff a written notice, or had sent untimely and/or defective notices, deliberately misrepresenting the amount of the debt, the creditor's name, and the consumer's right to dispute and obtain verification of the debt.



EXHIBIT A

83. Wells Fargo Bank (Wachovia) imposed capricious and unlawful restrictions on the manner, place, and form in which delinquent payments must be paid. Wells Fargo Bank (Wachovia) routinely and wrongfully rejected payments made by Plaintiff without sufficient legal or contractual basis.

84. In connection with foreclosure filings, Wells Fargo Bank (Wachovia) routinely rushed to file foreclosure notices regarding Plaintiff's Subject Property without properly investigating and verifying the delinquency status of the loan. Wells Fargo Bank (Wachovia) and its attorneys filed foreclosure documents supported by affidavits that deliberately, maliciously, and falsely claim that Wells Fargo Bank (Wachovia) is the holder and owner of the underlying promissory note and/or the mortgage, and thus a creditor, when in fact Wells Fargo Bank (Wachovia)has no ownership rights in the note and/or the mortgage but is simply attempting to collect a delinquent debt owed or due another. In so doing Wells Fargo Bank (Wachovia) intentionally conceal material facts from borrowers and the courts in an effort to obtain quick decrees of foreclosure, cloud title through bogus recordations, and reap financial benefits through "corporate advances" tacked to the principal owed by the borrower.

85. Wells Fargo Bank (Wachovia) "advanced" money to Plaintiff to pay for items such as property inspections and maintenance. Pursuant to the recorded Mortgage Note and Deed of Trust, Wells Fargo Bank (Wachovia) adds these "corporate advances" to Plaintiff's loan balance. Wells Fargo Bank (Wachovia) charged Plaintiff for alleged property inspection fees and maintenance fees when the real purpose of the inspector's and/or property management employee's visit to the property was to attempt to collect on the loan, contact the borrower, and to impermissibly harass, annoy, and pressure the borrower. Wells Fargo Bank (Wachovia) charged Plaintiff for property inspections and employs property management firms, even when Wells Fargo Bank (Wachovia) has no reasonable basis to conduct an inspection or undertake property maintenance resulting excessive, abusive inspections of Plaintiff's Subject Property.

86. When Plaintiff requested the amount of money required to reinstate or pay off her loan, Wells Fargo Bank (Wachovia) assessed fees, such as late fees, prepayment penalties,

loan modification fees, property inspections, and court costs, which was not authorized by the Note, Deed of Trust, mortgage documents, state law, and/or not actually incurred.

**DEFENDANTS' ACT IN CONCERNT, CO-CONSPIRACY AND IN DUAL-AGENCY TO PERPETRATE FRAUDULENT LOAN SECURITIZATION SCHEME TO DEFRAUD PLAINTIFF**

87. Plaintiff is informed and believes that the loan securitization process has created a situation where no single entity has complete ownership of the Loan, or even sufficient authority to negotiate a workout or modification to the Loan. As a result the Lender, unknown investors and one or more servicers all entered into servicing agreements with an entity that cannot speak for the Loan. Servicer represented that it had the right and authority to foreclose on the Subject Property. Plaintiff is informed and believes that this representation was false because all of Servicer's and Servicer's rights regarding the Loan are derivative of rights held by unknown investors whose rights are herself dependent on the rights of the Lender and Broker who perpetrated the initiation of the Loan. Plaintiff is informed and believes that Lender and Servicer falsely, wrongfully, and further negligently or intentionally represented to Plaintiff that they had authority to service, collect, negotiate, work-out, and foreclose the Loan notwithstanding the deficiencies with the Loan.

88. There is no evidence that Defendants ever provided Plaintiff with initial disclosures as required by state and federal law. Several attempts were made to the current loan servicer for copies of these initial disclosures, but Defendants unable or unwilling to provide them. Plus, Plaintiff does not believe, and therefore alleges upon such belief, that she ever saw either an initial good faith estimate or an initial truth in lending statement. Initial disclosures are supposed to be sent out to Plaintiff before she signed the final loan documents so she can know the terms and costs of the loan before it is too late to look for a different loan.

89. It is a violation of Fair Lending laws for Defendants to not properly disclose the terms and true costs of the loan to Plaintiff and a separate violation for not keeping copies of the required initial disclosures for future audit. There are many non-traditional terms to this loan that Plaintiff was not aware of or was confused with these features an adjustable rate

mortgage with a two year prepayment penalty. Plaintiff was never properly informed about the complicated and dangerous features of the loan and he appears to have been intentionally deceived by Defendants into accepting this loan without knowing what it was.

90. Because Plaintiff was deceived into taking a high-cost adjustable rate mortgage that he could not afford, he fell behind on his mortgage payments and his current loan servicer has started the foreclosure process against his home. As previously alleged there appears to have been errors in way the foreclosure process has been carried out. The assignments of the deed of trust and substitutions of trustees heretofore alleged are irreconcilable and break the chain of title. State law is specifically delineated to instruct in detail the conduct of foreclosure proceedings, because without direct judicial supervision, the deprivation of title to a borrower's home is a denial of fundamental due process of law. It appears that Defendants, and each of them have violated the law in regard to the proper foreclosure process. Plaintiff is informed and believes that at the time the Loan was approved, it required income in excess of Plaintiff's income to reasonably service the indebtedness.

91. Plaintiff is informed and thereon believes that Loan Seller was not in fact the lender in this transaction, but was paid a fee to pose as a residential mortgage lender. In fact the source of loan funds, and thus the actual lender(s) are the underwriter (Mortgage Aggregator and Investment Banker) and the Investor(s) in Certificates secured by the Loan and other similar instruments (collectively "Lender"). These are other parties whose identities, and the nature and amount of fees they paid to the Loan Seller were withheld from Plaintiff at the closing of the Loans. Despite numerous requests they continue to be withheld from Plaintiff by the Defendants contrary to the requirements of Federal Law and applicable State Law.

92. Dual Agency implicates all Defendants as co-conspirators in said illegal lending scheme. Unknown to Plaintiff, the Loan Seller, acting as a principal in its relationships with the independent appraiser of the property and the mortgage brokers and mortgage originators, induced the Plaintiff into transactions that did not and could not meet normal underwriting standards for a residential mortgage. The Loan Seller posed as a

conventional mortgage lender, thus leading Plaintiff to reasonably believe that the Loan Seller, the Mortgage Broker, and the Loan Originator had an interest in the repayment of the Loans that Plaintiff was induced to enter into.

93. Plaintiff is now informed and thereon believes that the Loan Seller. Loan Broker, appraisers, loan originators, title agents, escrow agents and Trustees, had no stake in the loan repayment and no interest beyond closing the transactions and collecting fees from the Lenders. This is contrary to representations and assurances from the conspiring participants in this fraudulent scheme. Plaintiff is informed and believes that the borrower's income and the appraisal were intentionally and knowingly inflated along with other loan data to justify the closing of the transactions.

94. Plaintiff relied upon the due diligence of the apparent lender, actually the Loan Seller in executing and accepting the closing documents. In fact, no lender was involved in the closing in the sense of an entity performing due diligence and evaluation pursuant to national standards for underwriting and evaluating risk of loaning money.

95. Plaintiff is informed and believes that the Defendants' purpose was solely to collect fees, rebates, kickbacks and profits that were never disclosed to Plaintiff and have only recently been discovered by Plaintiff through consultation with experts in securitization of residential mortgage loans and diligent research.

96. Plaintiff is informed and believes that Loan Seller was named as the Payee on the Loans and the lender under the Deeds allegedly securing performance of the Loans. Plaintiff is the named payer on the Loan. In accordance with State law, the Deeds and terms of security were recorded in the county records.

97. Plaintiff is now informed and believes that notwithstanding the above, and without the knowledge of the Plaintiff at the time, the Loan Seller had entered into Assignment and Assumption Agreements with one or more parties and Pooling and Service Agreements with one or more parties including but not limited to the mortgage aggregator prior to or contemporaneously with the closing of the subject loan transaction. Under the terms of these agreements, the Loan Seller received certain payments not disclosed to

Plaintiff.

**DEFENDANTS' FAILED TO DISCLOSE TO PLAINTIFFS ITS FRAUDULENT SCHEME OF PACKAGING PLAINTIFF'S LOAN IN MORTGAGE BACKED SECURITIES, CREDIT DEFAULT SWAPS UTILIZED BY PLAINTIFF TO HIDE RISK AND MAXIMIZE PROFITS CAUSING DAMAGES TO PLAINTIFF.**

98. Plaintiff is informed and believes that contrary to the documents presented before and during the closing of the loan transaction, the Loan Seller was neither the source of funding nor the lender.

99. Thus at the time of recording, the source of funding and the lender was a different entity than the nominal mortgagee or beneficiary under the deed of trust and was neither named nor disclosed in any fashion.

100. The security for the loan thus secured an obligation to the Loan Seller that had been paid in full by a third party, the actual lender. Said third party was acting as a institution or lender without even having been chartered or registered to do so despite regulations to the contrary from laws and rules of State or Federal authorities and/or agencies.

101. Plaintiff is informed and believes that the Loan and Deed were ostensibly allocated into a new entity (Special Purpose Vehicle "SPV") formed for the express purpose of holding the pooled assets under certain terms.

102. The terms included the allocation of payments from one note to pay any deficiency in payment of another note in unrelated loan transactions contrary to the terms of each such note which required payments to be allocated to the principal, interest, escrow and fees associated with only that specific loan transaction.

103. Whether such deficiency was caused by the difference between the higher general terms of description of the note or the lower actual payment requirements from the borrower is not known.

104. Plaintiff is informed and believes that insurance was purchased from proceeds of these transactions, credit default swaps were purchased from proceeds of these transactions, the investors' investments were oversold to create a reserve pool from which the SPV could

pay deficiencies in payments, and the SPV created cross-collateralization agreements and overcollateralization of the pool assets to assure payments to the investors, thus creating co-obligors on the payment stream due from the Plaintiff on the Loans.

105. The pool assets, including the Loans and Deeds were pledged completely to the owners of the asset-backed securities. All the certificates were then transferred to Sellers who in turn sold the certificates in varying denominations, each of which had slightly different terms depending upon which segment of the pools (tranches) secured the investments.

106. If there is a holder in due course of the Plaintiff's Loans and Deeds arising from the subject loan transactions it is the investors who purchased said securities (certificates). Some of said securities are held by the original purchaser thereof, others were sold at weekly auction markets, others were paid by re-sales of property that was secured, others were paid from prepayments, others were paid by sale at full or partial price to the investment bank that originated the entire transaction, some of which might be held by the Federal Reserve as nonrecourse collateral, and others might have been paid by one or more of the insurance, credit default swaps, cross guarantees or cross collateralization of the segment of the pool that secured the relevant investor who owned certificates backed by a pool of assets that included the subject loan transaction.

**DEFENDANTS' FRAUDULENT MORTGAGE BACKED SECURITIES VIOLATED SECURITIES EXCHANGE COMMISSION REGULATIONS**

107. Moreover, Plaintiff is informed and believes and thereon alleges that the unlawfully related, interconnected, and controlled entities of the business combinations violated regulations promulgated by the Securities Exchange Commission ("SEC"), generally accepted accounting principles ("GAAP") and accounting standards ("FAS") such that the purported transfers of the Loans and Deeds were not "true sales" or defeasances, but instead had, by agreement of the business combinations, Defendants included, indicia of retained control, including repurchase rights and obligations, that provided incentives to them to preclude and avoid Plaintiff from discovering the true beneficial holders of her instruments, and thus providing Plaintiff a true, meaningful opportunity to avoid loss to herself, and

correlatively, an opportunity for the true note holders to mitigate their own loss of investments by a mutually acceptable modification of the Loans. Plaintiff is informed and believes and thereon alleges that as a consequence of the wrong acts and conduct of Defendants herein alleged, both Plaintiff and the true note holders have been irreparably harmed and damaged.

## THE FEDERAL GOVERNMENT'S FORECLOSURE PREVENTION AND LOAN MODIFICATION PROGRAM

108. The United States Congress passed the Emergency Economic Stabilization Act of 2008 (the" Act") on October 3, 2008. (12 U.S.C. § 5211 et. seq.) The purpose of the Act was to grant the Secretary of the Treasury the authority to restore liquidity and stability to the financial system, and ensure that such authority was used, in part, to "preserve homeownership." (Act, 2(1)(B)). In addition to allocating $700 billion to the United States Department of the Treasury, the Act also specifically granted the Secretary of the Treasury the authority to establish the Troubled Asset Relief Program or TARP ("TARP"). (12 U.S.C. §§ 5211, 5225.)

109. In exercising its authority to administer TARP, Congress mandated that the Secretary of the Treasury "shall" take into consideration the "need to help families keep their homes and to stabilize communities." (12 U.S.C. § 5213(3).) To that end, Congress created two specific sections within Title I of the Act related to homeowners. Section 109 of the Act is entitled "Foreclosure Mitigation Efforts," and specifically states that the Secretary "shall" implement a plan to "maximize assistance for homeowners." (12 U.S.C. § 5219(a)). These efforts are to be coordinated with the federal agencies including the Federal Housing Finance Agency, which is the conservator for Fannie Mae and Freddie Mac. The Act further requires the Secretary of the Treasury to consent to any reasonable loan modification offer:

> "[T]he Secretary ***shall*** consent, where appropriate, and considering net present value to the taxpayer, to reasonable requests for loss mitigation measures, including term extensions, rate reduction, principal write

> downs, increases in the proportion of loans within a trust or other structure allowed to be modified or removal of other limitations on modifications."

(emphasis added; 12 U.S.C. § 5219(c)).

110. Similarly, Section of the Act requires the Federal Housing Finance Agency, as conservator for Fannie Mae and Freddie Mac, to create and implement a plan to prevent foreclosures. Specifically, the Act states:

> [T]he Federal property manager [defined, in part, as the Federal Housing Finance Agency] shall implement a plan that seeks to maximize assistance for homeowners and ... minimize foreclosures.

(U.S.C. § 5220(b)(1).

111. The statutory tools to be used by Fannie Mae and Freddie Mac include reducing interest rates and reducing the principal balance of mortgage loans.

**MAKING HOME AFFORDABLE PROGRAM AND HAMP**

112. Pursuant to its legal authority, as granted to it by Congress, both the Treasury Secretary and the Director of the Federal Housing Finance Agency announced the Making Home Affordable program on February 18, 2009. The Making Home Affordable program consists of two subprograms. The first subprogram relates to the creation of refinancing products for individuals with minimal or negative equity in their home, which eventually was entitled the Home Affordable Refinance Program or HARP. The second subprogram relates to the creation and implementation of a uniform loan modification protocol, which eventually was entitled the Home Affordable Modification Program or HAMP.

113. The scope of HAMP is broad. The Treasury Department estimates that approximately 85 percent of homeowners in the United States are eligible for the program. Homeowners who meet the government's criteria and standards for the program are entitled to a loan modification pursuant to the terms of HAMP. A mortgage loan servicer implementing HAMP does not have discretion to deny a homeowner access to the HAMP program if the homeowner satisfies the government's criteria for the program.

114. HAMP is funded by the federal government, primarily with TARP funds. The Treasury Department has allocated at least $50 billion of its TARP money to fund the HARP refinance and HAMP modification programs and offered an additional $25 billion of non-TARP funds, totaling $75 billion.

115. By statute, the Treasury Department, Fannie Mae and Freddie Mac must jointly develop the policies and procedures for the Making Home Affordable Program, including HAMP.

116. Fannie Mae is the fiscal agent of the federal government for HAMP. Freddie Mac is responsible for compliance, that is, auditing mortgage loan servicers for compliance with program rules and protocols. HAMP applies to any mortgage loan owned by Fannie Mae and Freddie Mac, as well as any loans owned by companies that accepted the TARP money or who volunteered to participate in the program.

117. Defendant Wells Fargo Bank (Wachovia)accepted over $25 billion in TARP money on October 28, 2008 in order to bailout a failing Wells Fargo Bank (Wachovia) and its Defendant subsidiaries. Defendant Wells Fargo Bank (Wachovia) voluntarily agreed to administer HAMP and participate in the program, entering into a "Commitment to Purchase Financial Instruments and Servicer Participation Agreement for the Home Affordable Modification Program under the Emergency Economic Stabilization Act of 2008 ("Wells Fargo Bank (Wachovia)SPA" when referring to this specific contract; "SPA" when referring to such contracts in general) contract with Defendant Fannie Mae, as financial agent for the United States, on April 13, 2009.

118. In entering into Wells Fargo Bank (Wachovia)'S SPA, Defendant Wells Fargo Bank (Wachovia) agreed to be bound by HAMP requirements and must abide by the framework and protocols for administering the benefits of HAMP.

**HAMP IMPLEMENTATION FRAMEWORK**

119. From March 4, 2009, to present, the Treasury Department, Fannie Mae and Freddie Mac have issued a series of directives for the servicers of mortgage loans and the implementation of HAMP. The directives set forth the framework and protocol to implement

HAMP. Fannie Mae and Freddie Mac both mandate that its servicers participate in HAMP. Guidelines issued by Fannie Mae, Freddie Mac, or the Treasury Department are also legally binding for program participants.

120. HAMP is always clearly identified as a program of the federal government. For example, Defendant Wells Fargo Bank (Wachovia) states on its website that Making Home Affordable is part of President Obama's comprehensive strategy to get the housing market back on track. Through the Making Home Affordable Program, up to millions of American families may be eligible to refinance or modify their loan payment to a more affordable payment now and into the future. The program has a modification provision as well as a refinance provision. Borrowers can get additional information at the Making Home Affordable website. This site includes questions and answers that will help homeowners determine if they are eligible for assistance.

121. HAMP is premised on the idea that getting a homeowner's monthly payment to 31% of the homeowner's gross monthly income will be a sustainable loan modification. (U.S. Department of Treasury's Making Home Affordable Summary of Guidelines March 4, 2009.) Prior to any foreclosure, mortgage loan servicers are required to follow three basic steps for all distressed homeowners with the goal of reaching a monthly mortgage payment of 31% of the homeowner's gross monthly income. (Fannie Mae, Announcement 09-05R; Freddie Mac, Single Family Servicer Guide C 65.1; Treasury Department, Supplemental Directive 09-01).

122. The first step is to identify the homeowner's income. Initially the income may be unverified, and then the mortgage loan servicer must create a three-month trial period while it verifies income. Once income is verified, the modification becomes permanent. The second step is to calculate the "target payment," which is 31 % of the homeowner's gross monthly income.

123. The third step is to implement the "loss mitigation waterfall." The servicer is required to use each loss mitigation tool within the waterfall, in the correct order, until the servicer reaches the target payment. There are four loss mitigation tools in the waterfall, which must be applied in the following order: (a) capitalizing arrearages, meaning that accrued

interest, funds advanced by the servicer, and appropriate foreclosure expenses incurred by the servicer are added to the existing principal balance of the mortgage loan; (b) reducing the interest in increments of .125% until the target payment is reached or the servicer reaches a 2% floor; (c) extending the term of the loan or amortization period by one month increments until the target payment is reached, but the loan schedule cannot exceed 480 months (40 years) from the date of the loan modification; and, finally (d) forbearing a part of the principal balance, meaning that the principal amount of the loan will be reduced in increments until the target payment is reached. The reduction, however, is not forgiven. It is simply a balloon payment that must be paid at the end of the loan term. The principal balance forbearance does not accrue interest or amortize. It is also not included in calculating a monthly payment.

124. Initial eligibility for HAMP is determined by the five general criteria previously described in the foregoing.

Wells Fargo Bank (Wachovia)**'S FAILED PROMISES UNDER HAMP**

125. Actual interface with borrowers – including such tasks as payment processing, escrow maintenance, loss mitigation and foreclosure – are known as "servicers." Servicers typically act as the agents of the entities that hold mortgage loans. America's Servicing Company is a servicer operated by Wells Fargo Bank (Wachovia) and its actions described herein were made as agents for the entities that hold mortgage loans.

126. Should a servicer elect to participate in HAMP, they execute a Servicer Participation Agreement ("SPA") with the federal government and Fannie Mae. On April 13, 2009, Wells Fargo Bank (Wachovia) Home Mortgage executed an SPA, thereby making Wells Fargo Bank (Wachovia) a participating servicer in HAMP.

127. The Wells Fargo Bank (Wachovia)SPA incorporates all "guidelines," "procedures," and "supplemental documentation, instructions, bulletins, frequently asked questions, letters, directives, or other communications" issued by the Treasury, Fannie Mae or Freddie Mac in connection with the duties of Participating Servicers. These documents together are known as the "Program Documentation" ("Wells Fargo Bank (Wachovia) SPA" SPA 1.B.), and are incorporated by reference herein.

128. The SPA mandates that a Participating Servicer "shall perform" the activities described in the Program Documentation "for all mortgage loans it services." (SPA 1.A., 2.A.). The Program Documentation requires Participating Servicers to evaluate all loans, which are 60 or more days delinquent for HAMP modifications. (SD 09-01 p. 4.) In addition, if a borrower contacts a Participating Servicer regarding a HAMP modification, the Participating Servicer must collect income and hardship information to determine if HAMP is appropriate for the borrower.

129. Certain classes of loans, namely those held by Federal National Mortgage Association ("Fannie Mae"), Federal Home Loan Mortgage Corporation ("Freddie Mac") or companies that accepted money under the TARP program, are subject to mandatory inclusion in HAMP. The Program Documentation also includes Supplemental Directive 09-01 ("SD 09-01,"). Home Affordable Modification Program; Base Net Present Value (NPV) Model Specifications ("NPV Overview,") and Supplemental Documentation—Frequently Asked Questions ("HAMPFAQS,") and Supplemental Directive 09-08 ("SD 09-08,"). These documents together describe the basic activities required under HAMP and are incorporated by reference in both of the TPP Agreements signed by Plaintiffs as well as herein.

130. A HAMP Modification consists of two stages. First, a Participating Servicer is required to gather information and, if appropriate, offer the homeowner a Trial Period Plan ("TPP"). The TPP consists of a three-month period in which the homeowner makes mortgage payments based on a formula that uses the initial financial information provided.

131. Wells Fargo Bank (Wachovia) offers TPPs to eligible homeowners by way of a TPP Agreement, which describes the homeowner's duties and obligations under the plan and promises a permanent HAMP modification for those homeowners that execute the agreement and fulfill the documentation and payment requirements. If the homeowner executes the TPP Agreement, complies with all documentation requirements and makes all three TPP monthly payments, the second stage of the HAMP process is triggered, in which the homeowner is offered a permanent modification.

132. Wells Fargo Bank (Wachovia) has routinely failed to live up to their end of the TPP Agreement and offer permanent modifications to homeowners. In January 2010, the U.S. Treasury reported that Wells Fargo Bank (Wachovia)'s parent company, Wells Fargo Bank (Wachovia) Bank, NA had 350,169 HAMP-eligible loans in its portfolio. Of these loans, just 8,424 resulted in permanent modifications (approximately 2% of HAMP-eligible loans) even though many more homeowners had made the payments and submitted the documentation required by the TPP Agreement. By failing to live up to the TPP Agreement and convert TPPs into permanent modifications, Wells Fargo Bank (Wachovia) is not only leaving homeowners in limbo, wondering if their home can be saved. Wells Fargo Bank (Wachovia) is also preventing homeowners from pursuing other avenues of resolution, including money they are putting toward TPP payments to fund bankruptcy plans, relocation costs, short sales or other means of curing their default.

133. The eligibility criteria for HAMP, as well as the formula used to calculate monthly mortgage payments under the modification, are explained in detail in SD 09-01. Generally speaking, the goal of a HAMP modification is for owner-occupants to receive a modification of a first-lien loan by which the monthly mortgage payment is reduced to 31% of their monthly income for the next five years.

Wells Fargo Bank (Wachovia)**'S FAILURE TO ENGAGE IN APPROPRIATE LOSS MITIGATION ESTOPS** Wells Fargo Bank (Wachovia)**'S ATTEMPS AT FORECLOURE, AS A MATTER OF LAW**

134. Wells Fargo Bank (Wachovia)'S failure and/or inability to offer our eligible Plaintiff a HAMP loan modification before proceeding or threatening foreclosure is violative of HAMP. (Making Home Affordable Guidelines, Department of Treasury, March 2009). Pursuant to HAMP and Wells Fargo Bank (Wachovia)Wells Fargo Bank (Wachovia) Cal. Civ. Code § 2923.53 exemption affidavit, Plaintiff is to be offered a modification that lowers their monthly mortgage payment to a targeted 31% of their monthly gross income.

135. Wells Fargo Bank (Wachovia)'S inability to legally foreclose on Plaintiff rests on the determination of two important legal issues: 1) whether a Servicer must conduct a Net

Present Value (NPV) analysis of Plaintiff's eligibility for a loan modification before the foreclosure, and 2) if eligibility is found, whether the loan modification produced by the NPV analysis must be offered before the foreclosure.

136. A number of theories can also serve as the basis for affirmative actions against services for their routine failure to abide by HAMP guidelines. As of this writing at least one statewide class action has been field challenging a HAMP Servicer's denial of loan modifications. (*Williams v. Geithner* (D. Minn.). Material about this case, including the complaint, is available at www.hppinc.org/ projects/index.php? strWebAction=resource _detail&intResourceID=112.

137. Plaintiff has a meritorious cause of action against Wells Fargo Bank (Wachovia) based on Wells Fargo Bank (Wachovia) denial of procedural due process of government HAMP benefit. Said theory is based on a series of successful lawsuits in the early 1980s by farmers. The farmers were denied access to a government program to prevent foreclosure during the farm crisis, and alleged very similar issues to the problems with HAMP. In those lawsuits, the Plaintiffs also successfully obtained a moratorium on foreclosure until the government promulgated the proper rules or guidelines.

**COURTS HAVE APPLIED SIMILAR RULES IN THE FHA CONTEXT AS PREREQUISITES TO FORECLOSURE, MANDATING Wells Fargo Bank (Wachovia) TO OFFER PLAINTIFF LOAN MODIFICATION PURSUANT TO HAMP**

138. The HAMP guidelines- explicitly adopted by Congress in the Helping Families Save Their Home Act – are directly analogous to FHA rules requiring Servicers to engage in loss mitigation. Just like the FHA program, HAMP's primary objective is to keep Americans in their homes by preventing avoidable foreclosure, (See US Dept of Treasury Supplemental Directive 09-01 (Apr. 6, 2009), available at www. hmpadmin.com/portal/Index.html). Servicers must sign a contract with the Treasury financial agent agreeing to review eligible borrowers before proceeding with a foreclosure sale. Thus HAMP, like FHA, creates a contractual obligation that Servicers review loans of all eligible Plaintiffs according to the NPV

analysis. The well-established principles of equity articulated in the court's analysis in Neal (*Servicer Home Mortg., Inc. v. Neal,* at 552) apply equally to the HAMP modification scenario.

139. The FHA has long had extensive rules requiring Servicers to engage in loss mitigation before foreclosing on property. Many courts have held that the Servicer's failure to follow the HAMP guidelines provides a defense to the foreclosure. (Id. *See also Countrywide Home Loans, Inc. v. Wilkerson,* 2004 WL 539983 (N.D. Ill. Mar. 12, 2004); *Williams v. Nat'l Sch. of Heath Tech., Inc.*, 836 F. Supp. 273, 283 (E.D. Pa 1993), aff'd, 37 F3d 1491 (3d Cir. 1994); *Fed. Nat'l Mortg. Ass'n v. Moore*, 609 E Supp. 194, 196 (N.D. Ill. 1985); *Ghervescu v. Servicer,* 2008 WL 660248 (Cal. Ct. App. Mar. 13, 2008) (unpublished); *ABN AMRO Mortg. Group, Inc.*, 2009 WL 1066511 (Iowa Ct. App. Apr. 22, 2009); *Fed Land Bank of Paul v. Overboe,* 404 N.W. 2d 445,449 (N.D. 1987).

140. This was recently articulated by the Maryland Supreme Court, holding that principles of equity invalidate the declaration of default where the mortgagee fails to adhere to the mandatory HUD loss mitigation regulations. (*Servicer Home Mortg., Inc., v. Neal,* 922 A. 2d 538 (Md. 2007); See also *LaSalle Nat'l Bank v. Johnson,* 2006 WL 551563 (N.J. Super CT. Ch. Div. Mar. 3, 2006); *Washington Mut. Bank v. Teodorescu,* 2005 WL 31008231 (N.J. Super Ct. App. Div. Nov. 22, 2005) (no equitable relief where pro se borrower failed to show how Servicer's failure to follow HUD guidelines was unconscionable).

**THE NPV ANALYSIS OF PLAINTIFF'S APPLICATION REVEALS THAT** Wells Fargo Bank (Wachovia)**'S INVESTOR WILL DO BETTER FINANCIALLY FROM A LOAN MODIFICATION THAN A FORECLOSURE, THERE IS LITTLE JUSTIFICATION FOR A FORECLOSURE TO PROCEED WHEN BOTH THE INVESTOR AND PLAINTIFF WILL BE BETTER OFF FROM A LOAN MODIFICATION.**

141. The Equitable Nature of Foreclosure Requires that Servicers Offer Plaintiff a HAMP Loan Modification. The court of equity's requirements for fairness and reasonableness are not met if a Servicer foregoes HAMP's required analysis. Both the HAMP guidelines and

the new law entitle eligible Plaintiffs to the NPV analysis, and it would not be equitable for a court to permit foreclosure where this requirement has not been met.

142. Foreclosure is an equitable remedy- the majority rule is that default does not automatically entitle the mortgagee to foreclosure on the property. (See, e.g., *Woods v. Monticello Dev. Co.*, 687 P.2d 1324 (Colo. Ct. App. 1982) ("Equitable remedies are not automatic- the term itself implies a balancing"); *Sovereign Bank, E.S.B. v. Kuelzow*, 687 A.2d 1039 (N.J. Super .Ct. App. Div. 1997) ("Foreclosure is a discretionary remedy."; *M&T Mortg. Corp. v. Foy*, 858 N.Y.S.2d 567 (N.Y. Sup. Ct. 2008) ("The courts are not merely automatons mindlessly processing paper motions in mortgage foreclosure actions most of which proceed on default."); *Rosselot v. Heimbrock*, 54 Ohio App. 3d 103, 561 N.E.2d 555 (Ohio Ct. App. 1988) ("simply because appellant defaulted on the terms of his obligation to appellees docs not automatically entitle them to foreclosure because foreclosure of a mortgagor's equity of redemption is a separate question from the existence of a default on the underlying obligation"); see also 30A, C.J.S. Equity § 69 (2007) ("The granting of relief against forfeiture is generally discretionary, the controlling principle being that it will be granted where, and only where, it is equitable under the circumstances").

143. A court sitting in equity is obligated to evaluate its various options and seek a fair and reasonable result under the circumstances, (See, e.g., *Bisno v. Sax*, 175 Cal. App. 2d 714, 346 P.2d 814 (1959); *New Alliance Bank v. Win Holdings Int'l*, 2008 WL 732036 (Conn. Super. Ct. Feb. 27, 2008); *Rosselot v. Hembrock*, 561 N.E.2d 555 (Ohio Ct. App. 1998). Whether in a judicial or non-judicial foreclosure state. (See, e.g., *Lo v. Jensen*, 88 Cal. App. 4th 1093, 106 Cal. Rptr. 2d 443 (2001) ("if a non-judicial foreclosure sale has been unfairly or unlawfully conducted, the trial court has the power to set it aside"); *Gilroy v. Ryberg*, 266 Neb. 617, 667 N.W.2d 544 (2003) ("the trustor can sue in equity to set the sale aside."); see also Molly E. Jacobson-Greany, setting Aside Nonjudicial Foreclosure Sales: Extending the Rule to Cover Both Intrinsic and Extrinsic Fraud or Unfairness, 23 Emory Bankr. Dev. J. 139 (2006).

144. A loan modification NPV analysis simply evaluates whether the investor will benefit to a greater extent with a loan modification than from a foreclosure. (See also Diane

Pendley, Thomas Crowe, U.S. RMBS Servicers' Mitigation and Modification Efforts, Fitch Ratings: Structured Finance 1 (May 26, 2009). A HAMP loan modification analysis should be a prerequisite to allowing the equitable remedy of foreclosure, as "he who seeks equity must first do equity." (See, e.g., *Arizona Coffee Shop, Inc. v. Phoenix Downtown Parking Ass'n*, 95 Ariz., 98, 387 P.2d 801 (1963).

145. In addition, the party seeking to obtain the benefits of an equitable remedy must have clean hands. (*Servicer Home Mortg., Inc. v. Neal, at* 552.) As one court articulated the point: "The clean hands doctrine is applied not for the protection of the parties but for the protection of the court.... It is applied not by way of punishment but on considerations that make for the advancement of right and justice." (See, e.g., *Thompson v. Orcutt*, 257 Conn. 301, 310, 777 A.2d 670, 676 (2001) (citations omitted).

Wells Fargo Bank (Wachovia)**'S FAILURE TO COMPLY WITH THE HAMP NPV ANALYSIS CONSTITUTES "UNCLEAN HANDS" WHICH PRECLUDED FORECLOSURE AND TRANSLATES INTO PLAINTIFF'S NOT BEING IN DEFAULT UNDER THE MORTGAGE WHICH WOULD MEAN THERE WOULD BE NO GROUNDS FOR THE FORECLOSURE AND THE FORECLOSURE SHOULD NOT BE PERMITTED**

146. A number of courts have relied upon the "unclean hands" doctrine to prevent foreclosure, despite a Servicer's legal right to foreclose. (*LaSalle v. Bank Nat'l Ass'n v. Bardales*, 2009 WL 1312509 (Conn. Super. Ct. Apr. 14, 2009); *New Alliance Bank V. Win Holdings Int'l, Inc.*, 2008 WL 732036 (Conn. Super. Ct. Feb. 27, 2008); *Monetary Funding Group, Inc. v. Pluchino*, 2003 WL 22133826 (Conn. Super. Ct. Sept. 3, 2003); *Marin v. Seven of Five Ltd.*, 921 So. 2d (Fla. Dist. Ct. App. 2006); *Prudential Ins. Co. of Am. V. Jackson*, 270 N.J. Super. 510, 637 A.2d 573 (N.J. Super. Ct. App. Div. 1994); *M&T Mortg. Corp. V. Foy*, 858 N.Y.S.2d 567 (N.Y. Sup. Ct. 2008).

147. Courts often recognize the harshness of forfeiture in real estate contracts and, under the maxim "equity abhors a forfeiture," have in various jurisdictions refused in equity to uphold strict forfeiture provisions in contracts. (See, e.g. *Warner v. Haught, Inc.*, 329 S.E.2d

88 (W. Va. 1985); *Bailey v. Savage*, 236 S.E.2d 203 (W. Va. 1977). A court may be particularly attentive to this issue when the forfeiture seems disproportionate or oppressive and unconscionable under the circumstances.

148. As the HAMP loan modification analysis has the clear potential to obviate the need for forfeiture and lead to more balanced results for both the investor and Plaintiff, a court should be inclined to accept a Servicer's failure to properly evaluate Plaintiff for a loan modification as a valid defense to foreclosure.

Wells Fargo Bank (Wachovia)**'S FAILURE TO OFFER PLAINTIFF A HAMP LOAN MODIFICATION VIOLATES HAMP'S INDUSTRY STANDARD REQUIRING LOAN MODIFICATION ANALYSIS PRIOR TO FORECLOSURE, AS A MATTER OF LAW**

149. Industry standards generally provide a guiding principle for determination of whether a particular industry practices is valid, even when a law has not specifically delineated the practice (*Ladco Properties XVII v. Jefferson-Pilot Life Ins. Co.*, 531 F.3d 718 (8th Cir. 2008); *Federal Deposit Ins. Corp. v. Transworld Mortgage*, 120 F.3d 266 (5th Cir. 1997); *Puentes v. Servicer Home Mortg. Inc.*, 160 Cal. Ap. 4th 638, 72 Cal. Rptr. 3d903 (2008); *Bank of New York v. Nat'l Funding*, 2005 WL 527749 (Conn. Super. Ct. Jan. 21, 2005).

150. A Servicer's failure to comply with an industry standard set forth in federal law establishes a defense to foreclosure. Indeed, Congress has specifically articulated that the HAMP loan modification analysis is the standard of the residential mortgage servicing industry. (Helping Families Save Their Homes Act of 2009, Pub. L. No. 111-22 (2009). Section 129 provides: "Standard Industry Practice – the qualified loss mitigation plan guidelines issued by the Secretary of the Treasury under the HAMP guidelines issued by the Secretary of the Treasury under the Emergency Economic Stabilization Act of 2008 shall constitute standard industry practice for purposes of all Federal and State laws."

151. HAMP guidelines are required to be used unless specifically prohibited by the governing pooling and servicing agreements, and even then, the Servicers are required to use "reasonable efforts" to remove those obstacles. (Home Affordable Modification Program, Supplemental Directive 09-01 (Apr. 6, 2009)). Most pooling and servicing agreements, which

govern the relationship between the Servicer and owner of the loan, include mandatory loss mitigation efforts before foreclosure is pursued. (Loss mitigation language from a 2006 ACE Securities (Deutsche Bank) Securitization is typical for PSA's:

> "in the event that any mortgage loan is in default or, ... the Servicer, consistent with Accepted Servicing Practices may waive, modify or vary any term of such mortgage loan ..., accept payment ... of an amount less than the stated principal balance in final satisfaction of such mortgage loan, or consent to the postponement of strict compliance with any such term or otherwise grant indulgence to any mortgagor. (Emphasis added).

(See Pooling & Servicing Agreement, ACE Securities Corp., Home Equity Loan Trust, Series 2006-ASAP3 Asset Backed Pass-Through Certificates.)

Wells Fargo Bank (Wachovia)**'S IMPROPER DENIAL OF A LOAN MODIFICATION EQUALS** Wells Fargo Bank (Wachovia) **HAS CONDUCTED NO NPV ANALYSIS, AS REQUIRED BY LAW**.

152. HAMP guidelines obligate Wells Fargo Bank (Wachovia) to evaluate the homeowner, the loan, and the home to see if the NPV analysis will return a sustainable loan modification. Implicit in that requirement is that the evaluation be reasonable and based upon applicable legal guidelines. A federally sponsored test for the fairness of Wells Fargo Bank (Wachovia)'S NPV valuation is on the publicly available FDIC Loan Mod in a Box. The FDIC has made available a spreadsheet analysis which is easily used on most spreadsheet software. As a result, a finding that a homeowner qualifies for a FDIC loan modification should indicate that Wells Fargo Bank (Wachovia)'S denial of a loan modification under the HAMP program was unreasonable.

153. The NPV calculation only measures the expected benefit to investors of a loan modification versus a foreclosure. Keep in mind that the NPV does not take account of the legal claims for relief a consumer may have, or the cost and time of litigation or any of the larger societal costs of a preventable foreclosure. As such, there will be cases when a borrower may fail the NPV but should still be offered a loan modification. These requirements are

intended to protect the investors with additional benefits to homeowners from fewer foreclosures.

**NON-EXISTENCE OF SPECIFIC NOTIFICATION PROCEDURES OR DISCLOSURE REQUIREMENTS FOR A HOMEOWNER THAT IS DENIED ACCESS TO HAMP**

154. There are no requirements that homeowners are told the specific reasons for their denial of a HAMP modification, and, in fact, the government requires no notice at all.

155. In contrast, all HAMP servicers have very specific requirements, instructions, and model letters related to homeowners who are accepted into the program. Denial is devoid of uniformity and standards. There is no model letter related to a denial of a HAMP modification. There are no requirements to inform a homeowner why they are denied access to the program, or any transparency related to how the loss mitigation waterfall was applied.

156. There is only one sentence in the entire guidance issued by Fannie Mae and the Treasury Department that addresses the topic of denial. In it, both Fannie Mae and the Treasury Department simply encourage servicers to communicate in writing, but such communication is not required and the notice does not need any detail. This sentence provides that after a borrower has submitted a signed Trial Period Plan to the service, if it is determined that the borrower does not meet the underwriting or eligibility standards, the servicer should promptly communicate this determination to the borrower in writing.

157. There is no written guidance or requirements at all related to homeowners who do not sign a Trial Period Plan and are denied access to the program without being given a temporary modification. Similarly, Freddie Mac has a half dozen standard documents or letters to be used for correspondence with homeowners who are eligible and accepted into HAMP. None of these documents relate to what and how a denial of access to HAMP should be communicated with homeowners. Elsewhere in the guide, there are no requirements that homeowners be contacted in writing related to their denial. Indeed, the only the person that is required to be informed in writing of the denial and basis for the denial by the servicer is Freddie Mac.

## NON-EXISTENCE OF ANY PROCEDURE PROVIDING A MEANINGFUL OPPORTUNITY TO BE HEARD, OR ANY PROCEDURE FOR IMPARTIAL REVIEW OR APPEAL OF AN ADVERSE DECISION OR TO UNDO A WRONGFUL FORECLOSURE

158. As alleged above, Defendants have created specific eligibility requirements and procedures that servicers must implement to get the monthly payments of distressed homeowners to the target payment. Defendants have also ordered Fannie Mae and Freddie Mac mortgage loan servicers and the participating servicers to suspend foreclosure proceedings for all eligible homeowners until they are determined to be eligible for HAMP or, if not eligible for HAMP, the loss mitigation program offered by the servicer.

159. Specifically, on March 4, 2009, the Treasury Department, Fannie Mae, and Freddie Mac ordered all of its servicers to cease foreclosures until homeowners were evaluated for eligibility for a modification through HAMP. Nonetheless, Defendants have not established any procedure providing borrowers such as

160. Marshall D Silvers with any meaningful opportunity to be heard, or with the right to have decisions affecting their rights under HAMP to be reviewed by an impartial arbiter, or to be appealed. As a result, wrong, arbitrary or capricious decisions affecting borrowers are without any procedure to correct errors and mistakes.

161. Defendants have no uniform program or procedure to ensure that the homeowner/borrower is given a meaningful opportunity to be heard, or to obtain review by an impartial arbiter, or to appeal, and have such appeal properly considered and impartially decided. There is also no mandatory process for how an appeal is communicated or triggered, nor is there evaluation criteria that all servicers must use when their decision to deny access to HAMP is appealed that would ensure "fair," "timely," and" appropriate" responses.

162. Further, if servicers do have such a process, there is no requirement that homeowners who are denied a HAMP modification be provided written notice of how to access any appeal process.

## CONTINUING DENIALS OF LOAN MODIFICATION UNDER HAMP



EXHIBIT A

163. Mr. Silvers called Defendant Wells Fargo Bank (Wachovia) on or about March 2009 and inquired whether a loan modification under HAMP could be done. Defendant Wells Fargo Bank (Wachovia) immediately responded that this was not possible, as the investors in the Loan were not participating in HAMP. In April 2009 Plaintiff learned for the first time of the existence and terms of Wells Fargo Bank (Wachovia)'S "SPA" for HAMP entered into between Defendant Wells Fargo Bank (Wachovia) and the federal government, through Fannie Mae, as Financial Agent for the United States; may have violated its obligations under Wells Fargo Bank (Wachovia)'S SPA by refusing to consider, and denying, Plaintiff's request for a loan modification under HAMP. (A copy of Wells Fargo Bank (Wachovia)'S SPA is attached hereto as Exhibit "F", and incorporated herein by this reference).

164. In May 2009 Marshall D. Silvers further learned for the first time that Defendants Geithner, Treasury, FHFA, Fannie Mae, Freddie Mac, and Wells Fargo Bank (Wachovia) had denied Plaintiff their constitutional right of procedural due process as alleged herein. In June 2009, Mr. Silvers again contacted Defendant Wells Fargo Bank (Wachovia) and requested a loan modification under HAMP. Once again, Plaintiff's request was denied, with Wells Fargo Bank (Wachovia) personnel again stating that the investors in the Loan are not participating in HAMP.

**PLAINTIFF IS ELLIGIBLE FOR A LOAN MODIFICATION UNDER HAMP**

165. Marshall Silvers is, and at all times relevant has been a good candidate for a loan modification under HAMP because her income has improved and he is capable of resuming mortgage payments, but he is unable to pay past due payments, and foreclosure costs and attorney fees without a loan modification. Marshall Silvers has met all of the eligibility requirements for a loan modification through HAMP. Eligibility for HAMP is determined by five general criteria.

**SERVICER'S FAILURE TO PROVIDE REASON(S) FOR HAMP PROGRAM DENIAL**

166. Despite satisfying these eligibility criteria, Marshall Silvers was denied access to HAMP. Other than oral statements by telephone that modification of the Loan under HAMP

is not possible because the "investors" in the Loan are not participating, Mr. Silvers has not been provided with any reasons why he has been denied a loan modification under HAMP, or even their right to have a request for a modification considered.

**LACK OF VALID BASIS FOR REFUSAL TO CONSIDER REQUEST FOR HAMP LOAN MODIFICATION**

167. The HAMP regulations and protocol, and Wells Fargo Bank (Wachovia)'S SPA, required Defendant Wells Fargo Bank (Wachovia), to provide a HAMP loan modification to all borrowers who meet its eligibility standards, and who thereafter meet the qualification requirements (e.g., providing verification of income therefore a permanent modification is done, passing the *Net* Asset Value test, etc:), with the exceptions discussed below. Loans owned, securitized or guaranteed by Fannie Mae or Freddie Mac are referred to as government sponsored enterprise, or GSE, loans.

168. A mortgage loan servicer that has executed an SPA is required to offer HAMP to all eligible borrowers whose loans are non-GSE owned, securitized or guaranteed, except with certain exceptions. Those excepts are set forth in the Wells Fargo Bank (Wachovia) SPA.

169. The Wells Fargo Bank (Wachovia) SPA provides:

> "Authority and Agreement to Participate in Program. A. Servicer *shall* perform the Services for *all mortgage loans it services,* whether it services such mortgage loans for its own account *or for the account of another party, including any holders of mortgage-backed securities* (each such other party, and "Investor"). Servicer shall use *reasonable efforts* to remove all prohibitions or impediments to its authority, and use *reasonable efforts* to obtain all third party consents and waivers that are required, by contract or law, *in order to effectuate any modification of a mortgage loan under the Program."*
> "B. Notwithstanding subsection A., if (x) Servicer is *unable* to obtain all necessary consents and waivers for modifying a mortgage loan, or *(y)* the pooling and servicing agreement or oilier similar servicing contract governing servicer's servicing of a mortgage loan *prohibits* Servicer from performing the services *for that mortgage loan,* Servicer shall not be required to perform the Services with respect to that mortgage loan and shall not receive all or any portion of the purchase price (as defined below) otherwise payable with respect to such loan. (Wells Fargo Bank (Wachovia) SPA, [italics added]).

170. Defendants Wells Fargo Bank (Wachovia) never advised Plaintiff that "the pooling and servicing agreement other similar servicing contract governing [Wells Fargo Bank (Wachovia) Bank] servicing of a mortgage loan prohibits [Defendants] from performing the Services for [Plaintiff's loan])". Defendants Wells Fargo Bank (Wachovia) and Wells Fargo Bank (Wachovia) never advised Plaintiff that they had used "reasonable efforts to remove all prohibitions or impediments to [their] authority, and use[d] reasonable efforts to obtain all third party consents and waivers that are required, by contract or law, in order to effectuate [the] modification of [Plaintiff's] loan under the Program."

171. Defendants consistent, and consistently immediate, response that the investors in the Loan were not participating in HAMP evidences the absence of any reasonable efforts to remove prohibitions or impediments, or to obtain consents or waivers, when needed. Even if, at "some point" Defendants undertook such reasonable efforts, Defendants may not, consistent with the Act and HAMP, stand upon stale efforts once and for all.

172. Marshall Silvers has been wrongfully denied his entitlement to make application for, and to obtain, a loan modification under HAMP, on the grounds stated by Defendant Wells Fargo Bank (Wachovia) Bank, that the investors in the Loan are not participating [in HAMP]. No authority exists for denying access to HAMP for this reason.

173. Plaintiff has reason to believe that Defendant Wells Fargo Bank (Wachovia) has generally failed to live up to its obligations as a participating mortgage loan servicer in HAMP. In the Servicer Performance Report through February 2010, issued by Treasury's Making Home Affordable Program, it was estimated that Defendant Wells Fargo Bank (Wachovia)was servicing 379,357 loans eligible for HAMP as 60 day plus delinquencies, yet it had started only 24,975 Permanent Modifications.

Wells Fargo Bank (Wachovia) **HAS FAILED TO IMPLEMENT A COMPREHENSIVE LOAN PROGRAM, AS IT HAD FRAUDULENTLY ASSERTED UNDER PENALTY OF PERJURY TO THE STATE OF CALIFORNIA PURSUANT TO ITS CIVIL CODE § 2923.53 EXEMPTION AFFIDAVIT.**

174. Further, Defendant Wells Fargo Bank (Wachovia) has violated Civil Code §2923.53 by virtue of its failure to implement a comprehensive loan modification program to justify their exemption from the requirements of Civil Code §2923.52.

175. Defendant Wells Fargo Bank (Wachovia)was granted final exemptions from Civil Code §2923.52(a) on June 12, 2009.

176. Defendant Wells Fargo Bank (Wachovia) has represented to the California Department of Corporations that they have implemented a comprehensive loan modification program, under penalty of perjury.

177. According to Civil Code §2923.53(a), this program "shall include all of the following features: (1) The loan modification program is intended to keep borrowers whose principal residences are homes located in California in those homes when the anticipated recovery under the loan modification or workout plan exceeds the anticipated recovery through foreclosure on a net present value basis. (2) The loan modification program targets a ratio of the borrower's housing-related debt to the borrower's gross income of 38 percent or less, on an aggregate basis in the program. (3) The loan modification program includes some combination of the following features: (A) An interest rate reduction, as needed, for a fixed term of at least five years. (B) An extension of the amortization period for the loan term, to no more than 40 years from the original date of the loan. (C) Deferral of some portion of the principal amount of the unpaid principal balance until maturity of the loan. (D) Reduction of the principal. (E) Compliance with a federally mandated loan modification program. (F) Other factors that the commissioner determines are appropriate. In determining those factors, the commissioner may consider efforts implemented in other jurisdictions that have resulted in a reduction in foreclosures. (4) When determining a loan modification solution for a borrower under the loan modification program, the servicer seeks to achieve long-term sustainability for the borrower"

178. Based on the targeted ratio of income to debt, Defendant Wells Fargo Bank (Wachovia)should have adjusted Plaintiff monthly mortgage to a 38% of Plaintiff gross income in order to comply with the requirements of Civil Code §2923.53.

179. Defendant Wells Fargo Bank (Wachovia) represented to the Department of Corporations that they had a program that "targets a ratio of the borrower's housing-related debt to the borrower's gross income of 38 percent or less, on an aggregate basis." Plaintiff fits this description yet has not been provided the opportunity to take part in such program.

180. Consequently, Defendant Wells Fargo Bank (Wachovia) has violated Civil Code §2923.53. By virtue of the violation of Civil Code §2923.53, Defendant Wells Fargo Bank (Wachovia) has violated Civil Code §2924 and committed Fraud by lying under penalty of perjury to the California State Government in its Section 2923.52(a) exemption affidavit.

181. The Defendants failure to comply with Civil Code §2924 greatly prejudiced the Plaintiffs rights of un-encumbering his property or refinancing his property due to Defendants' failure to properly notice Plaintiff of the foreclosure pending on his property.

182. As a result of these wrongful acts and omissions, Plaintiff was not properly notified of the pending foreclosure process that was instituted in violation of Civil Code §§ 2924(b) and 2923.5.

183. As a result of the statutory violations, the sale of the Subject Property was wrongful and should be rescinded.

184. Also, as a result of the statutory violations, the Trustee's Deed Upon Sale should be rescinded.

185. As a result of these wrongful acts and omissions, Plaintiff has been precluded from properly curing any default in his mortgage and also from all the rights and benefits that go along with a person's ability to own and reside in a home.

186. As a result of these wrongful acts and omissions, Plaintiff has been precluded from benefiting from the rights granted by Civil Code §§ 2924(b) and, 2923.5 and modifying his current loan to a principal amount and an interest rate which he could not only afford, but would have allowed him to stay in his home. Notwithstanding their violations, Defendant's willful and malicious conduct caused the foreclosure of Plaintiff's residence. Notwithstanding their violations, Defendants callously seek to evict Plaintiff from his home.

## FIRST CAUSE OF ACTION

### BREACH OF WRITTEN CONTRACT – HAMP/MHA

### (AGAINST Wells Fargo Bank (Wachovia)BANK, N.A.)

187. Plaintiff re-alleges and incorporates by reference the above paragraphs as though set forth fully herein.

188. Plaintiff is a Third Party Beneficiary to the Servicer Participation Agreement ("SPA") by and between Wells Fargo Bank (Wachovia) and Fannie Mae. On April 13, 2009, Wells Fargo Bank (Wachovia) Home Mortgage executed an SPA, thereby making Wells Fargo Bank (Wachovia) a participating servicer in HAMP. Wells Fargo Bank (Wachovia) and Fannie Mae and the Department of Treasury intended Plaintiff to benefit under the SPA.

189. Wells Fargo Bank (Wachovia) unjustifiably and inexcusably breached said SPA Contract by failing to perform its obligations thereunder as described above.

190. Wells Fargo Bank (Wachovia)'s breach of the SPA Contract will result in the loss of Plaintiff's Subject Property.

191. Pursuant to California Civil Code Section 1559, Plaintiff may enforce the SPA contract's provisions.

192. Plaintiff seeks damages according to proof and reserves his right to seek equitable remedies to prevent the sale of his Subject Property.

193. Plaintiff, Under HAMP, is an Intended Third Party Beneficiary Under the SPA Contract Between Wells Fargo Bank (Wachovia) and Fannie Mae. "A contract, made expressly for the benefit a third person, may be enforced by him at any time before the parties thereto rescind it." Cal. Civ. Code §1559. Here, the Contract benefits a specific and limited class of borrowers who can seek enforcement of the Contract. Plaintiff is such a qualified borrower. Thus the *Reyes* Court held that a plaintiff-borrower under HAMP sufficiently stated a plausible claim for a breach of contract under a third-party beneficiary theory; the factual and legal issues are nearly identical to this action. *Reyes v. Saxon Mortgage Services, Inc.*, (S.D. Cal. Nov. 5, 2009, No. 09cv1366 (DMS)) __ F.Supp.2d __ at *2 [2009 WL 3738177] (holding that,

"Contrary to Defendant's assertion, Plaintiff has alleged sufficient facts to support his third party beneficiary theory.").

194. For an action involving third-party beneficiaries under a government contract to proceed depends upon an analysis of the following three critical cases: *Shell v. Schmidt*, 126 Cal.App.2d 279 (1954) The Shell plaintiffs filed suit as third-party beneficiaries alleging a breach of contract between the defendant and the Federal Housing Authority. The defendant was to build homes for sale to veterans. In return, the defendant received priority in securing materials needed to build the homes. Relying on Cal. Civ. Code §1559, the Shell court held: "Once it is established that the relationship between the contractor and the government is contractual, it follows that veterans purchasing homes, that is, the class intended to be protected by the contract, are third party beneficiaries of that contract. As already pointed out, the statute and the regulations passed thereunder resulting in the contract were passed to aid and assist veterans and for their benefit. Purchasing veterans constitute the class intended to be benefitted, and the contract must therefore be for their benefit." *Shell*, 126 Cal.App.2d at 290.

195. The Shell court concluded the plaintiff-veterans could maintain their cause of action as third-party beneficiaries. *Id.*

196. *Martinez v. Socoma Companies, Inc.*, 11 Cal.3d 394 (1974). The Plaintiffs in *Martinez* filed suit as third-party beneficiaries alleging a breach of contract between the defendant and the Secretary of Labor. The defendant contracted to hire and train unemployed residents of a "Special Impact Area" in Los Angeles. In return, the defendant would receive government funds. Although approving *Shell*, the *Martinez* court placed greater weight on the Restatement of Contracts rather than the common law principles encompassed in Cal. Civ. Code §1559 applied in *Shell*. The *Martinez* court held that the issue of plaintiffs' standing as third-party beneficiaries depended on the intent of the parties as manifested by the contract and the circumstances surrounding its formation. *Martinez*, 11 Cal.3d at 401-402. The *Martinez* court noted upon a breach, defendant Socoma would refund paid monies to the government. The government would lose as result of the breach as opposed to people to be trained and employed. The Martinez court further noted that third-party actions could affect the

administrative procedures in place to address disputes under the contract. Ultimately, the Martinez plaintiffs were deemed incidental beneficiaries without standing. *Id.* at 402.

197. *Zigas v. Superior Court*, 120 Cal.App.3d 827 (1981). The *Zigas* plaintiffs filed suit alleging that their landlord collected excessive rents in violation of a financing agreement. The plaintiffs' landlord received over $5 million in financing as part of the National Housing Act. In turn, the landlord had to adhere to the HUD-approved schedule of rents. After comparing and distinguishing Shell and Martinez, the *Zigas* court held the plaintiffs to be third-party beneficiaries with standing. The *Zigas* plaintiffs mirrored the situation of the *Shell* plaintiffs. The *Zigas* renters suffered damages as *Shell's* veterans had, there were no administrative procedures to address disputes as in *Martinez*, and the contract between the landlord and HUD was "narrow and specific: to provide moderate rental housing for families with children; in Shell, to provide moderate priced homes for veterans." *Zigas*, 120 Cal.App.3d at 837-838. The Zigas court noted the "requirement of HUD approval of rent increases could only benefit the tenants. Furthermore, even the most cursory review of the statutes and regulations which resulted in the contract ... leads to the conclusion that the tenants constitute the class which Congress intended to benefit." *Id.* at 835.

198. The Contract Between Wells Fargo Bank (Wachovia) and Fannie Mae. The Contract is entitled "COMMITMENT TO PURCHASE FINANCIAL INSTRUMENT and SERVICER PARTICIPATION AGREEMENT...." and is easily bifurcated. The "Servicer Participation" section spells out Wells Fargo Bank (Wachovia)'s obligations toward qualified borrowers. The "Commitment to Purchase" portion specifies Fannie Mae's obligations toward the Servicer vis-à-vis modified loans. If the Servicer does not modify a loan, the obligation of Fannie Mae to purchase does not arise. The more significant of the two sections is the Servicer Participation part. Plaintiff is a third-party beneficiary of the Contract; the Contract expressly states that "[Wells Fargo Bank (Wachovia)] shall perform the loan modification and other foreclosure prevention services described in ... the Program guidelines and procedures issued by the treasury...." Wells Fargo Bank (Wachovia) SPA. The Wells Fargo Bank (Wachovia) SPA Summary of Guidelines clearly states the Contract's purpose is to provide foreclosure

prevention services at paragraphs one and four: "Making Home Affordable will offer assistance to as many as 7 to 9 million homeowners, making their mortgages more affordable and helping to prevent the destructive impact of foreclosures on families, communities and the national economy... the Home Affordable Modification program will help up to 3 to 4 million at-risk homeowners avoid foreclosure by reducing monthly mortgage payments." The "program guidelines ... are expected to become standard industry practice in pursuing affordable and sustainable mortgage modifications."

199. Like *Shell* and *Zigas*, the Wells Fargo Bank (Wachovia) SPA Contract is narrow and specific. It details the procedures servicers like Wells Fargo Bank (Wachovia) shall follow to determine which borrowers qualify for a HAMP loan. The Guidelines provide at page two the borrower qualification terms. Like *Zigas*, qualifying borrowers constitute the class Wells Fargo Bank (Wachovia)and Fannie Mae intended to protect. Plaintiff meets the criteria for qualification under the Contract.

200. As in *Shell* and *Zigas*, Plaintiff as a plaintiff-borrower will suffer directly from a breach of the Contract. If Wells Fargo Bank (Wachovia) modifies the loan, Plaintiff keeps her home. If Wells Fargo Bank (Wachovia) refuses to comply with the explicit requirements of the Contract, Plaintiff will lose his home. The benefit of the Contract cannot be any more apparent. There are no administrative procedures set forth to address the breach of the Servicer Participation section of the Contract. There is no "watch dog" in place to ensure Wells Fargo Bank (Wachovia) complies with the terms of the Contract. As the party suffering from the breach, qualified borrowers have no recourse other than through the courts to enforce the provisions of the Contract as third-party beneficiaries; there is no other forum to seek redress. Holding otherwise would render the Home Affordable Modification Program ineffectual.

201. Chase merely places the onus on Plaintiff to show the loan's investor permits modification. Plaintiff alleges upon information and belief that the current investor allows modifications of its loans. To date, Wells Fargo Bank (Wachovia) has not indicated that the Loan cannot be modified. Wells Fargo Bank (Wachovia) is in custody of its servicing agreement with the current investor. If Wells Fargo Bank (Wachovia) is prohibited from

modifying Plaintiff's loan, Wells Fargo Bank (Wachovia) need only provide documentation indicating so; it has not.

202. As a borrower-applicant, the Court should follow the holding in *Reyes* and confer Plaintiff third-party beneficiary status to enforce the Contract's terms.

**SECOND CAUSE OF ACTION**

**BREACH OF WRITTEN CONTRACT – PLAINTIFF'S NOTE**

**(AGAINST Wells Fargo Bank (Wachovia)BANK, N.A.)**

203. Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

204. Plaintiff and Wells Fargo Bank (Wachovia) have a contractual relationship for the servicing of their Loan.

205. Wells Fargo Bank (Wachovia) is responsible for the mortgage loan servicing obligations under the Note.

206. The Note and Deed of Trust are industry standard form documents. Industry practice does not allow borrowers an opportunity to make changes to the Note or Deed of Trust. The Note and Deed of Trust are presented on a "take it or leave it" basis. Consistent with industry practice, Plaintiff was not provided an opportunity to make any changes to the Note or Deed of Trust and were offered them on a "take it or leave it" basis. Given the superior bargaining power of the industry and its lenders, the Note and Deed of Trust are contracts of adhesion.

207. Because the Note and Deed of Trust were made in California and concern property in California, the prohibition contained in California Civil Code Section 2954.4 is incorporated into the Note and Deed of Trust. Wells Fargo Bank (Wachovia) breached the terms of the Note by charging late fees even when Wells Fargo Bank (Wachovia) received monthly payments of interest and principal due before the due date or during the grace period.

208. Plaintiff has been damaged as the result of Wells Fargo Bank (Wachovia)'s breach of contract, including, but not limited to, incurring excessive late charges.

**THIRD CAUSE OF ACTION**

**UNFAIR BUSINESS PRACTICES – PLAINTIFF'S NOTE**

**(AGAINST Wells Fargo Bank (Wachovia), N.A.)**

209. Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

210. The conduct of Wells Fargo Bank (Wachovia), as set forth in the allegations in this complaint, constitutes unfair and/or fraudulent business practices under California Business & Professions Code section 17200, et seq.

211. Wells Fargo Bank (Wachovia)'s conduct alleged herein is unfair within the meaning of California Business and Professions Code section 17200 et seq.

212. Wells Fargo Bank (Wachovia)'s business practices, as alleged herein, are "unfair" because they offend established public policy and/or are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers. Wells Fargo Bank (Wachovia)'S conduct alleged herein is unfair because, among other reasons, Wells Fargo Bank (Wachovia) charged excessive late fees to Plaintiff.

213. Wells Fargo Bank (Wachovia)'s conduct alleged herein is fraudulent within the meaning of California Business and Professions Code section 17200 et seq.

214. Wells Fargo Bank (Wachovia)'S business practices, as alleged herein, are fraudulent because among other actions, they are likely to deceive consumers, including Plaintiff, into believing that the late charges were being calculated and assessed properly.

215. On behalf of the general public, Plaintiff requests that this court order that Wells Fargo Bank (Wachovia) be required to disgorge the profits it has have wrongfully obtained through the use of these unfair and/or fraudulent practices, provide restitution, and that an injunction issue to correct the wrongful business practices alleged in this complaint and to prevent Wells Fargo Bank (Wachovia) from engaging in the conduct alleged herein in the future.

**FOURTH CAUSE OF ACTION**

**UNJUST ENRICHMENT**

**(AGAINST Wells Fargo Bank (Wachovia)BANK, N.A.)**

216. Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

217. Wells Fargo Bank (Wachovia) actively participated in a scheme whereby it unlawfully and unfairly assessed excessive late fees on Plaintiff.

218. Wells Fargo Bank (Wachovia) knew and was aware of the unfair and/or deceptive acts and business practices.

219. Defendants concealed the true facts and circumstances from Plaintiff.

220. By wrongfully obtaining and assessing excessive late fees, Wells Fargo Bank (Wachovia) was unjustly enriched at the expense of Plaintiff.

221. Wells Fargo Bank (Wachovia) knew the benefit they were receiving as a result of its wrongful acts, and has enjoyed the benefit of its financial gains, to the detriment and the expense of Plaintiff.

222. Retention of the monies gained through its wrongful acts and practices would be inequitable considering the circumstances by which Wells Fargo Bank (Wachovia) obtained these monies.

223. The actions described in this complaint by Wells Fargo Bank (Wachovia) were done with a conscious disregard of Plaintiff's rights. These actions constitute conduct which is despicable behavior done with an intent to injure Plaintiff, such as to constitute oppression, fraud or malice under California Civil Code § 3294, entitling Plaintiff to punitive damages.

224. Restitution alone would have little or no deterrent effect on Wells Fargo Bank (Wachovia), and without an award of exemplary damages, Wells Fargo Bank (Wachovia) is incentivized to pursue other malicious, oppressive and fraudulent schemes.

225. Plaintiff is entitled to and seek restitution and punitive damages from Wells Fargo Bank (Wachovia)and an order disgorging all profits, benefits, and other compensation obtained by Defendants for their wrongful conduct.

**FIFTH CAUSE OF ACTION**

**DECLARATORY RELIEF**

(**AGAINST** Wells Fargo Bank (Wachovia)**BANK, N.A.**)

226. Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

227. An actual controversy has arisen between Plaintiff, and Wells Fargo Bank (Wachovia) as to the parties' respective rights and obligations discussed above. Specifically, Plaintiff contends that the acts and practices of Wells Fargo Bank (Wachovia) as hereinabove alleged are unfair and/or fraudulent, in breach of contract, and Wells Fargo Bank (Wachovia) contends to the contrary.

228. Plaintiff requests that the court declare the acts and practices complained of herein to be unfair and/or fraudulent and in breach of contract

**SIXTH CAUSE OF ACTION**

**VIOLATION OF SECTION 1788.17 OF THE RFDCPA**

**(AGAINST Wells Fargo Bank (Wachovia)BANK, N.A.)**

229. Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

230. California Civil Code Section 1788.17 requires that Wells Fargo Bank (Wachovia) comply with the provision of 15 U.S.C. Section 1692, through their acts including but not limited to, the following:

231. (a) The Defendants violated California Civil Code Section 1788.17 by engaging in conduct, the natural consequence of which is to harass, oppress, and abuse persons in connection with the collection of the alleged debt.

232. (b) The Defendants violated California Civil Code Section 1788.17 by misrepresenting the status of the debt.

233. (c) The Defendants violated California Civil Code Section 1788.17 by using unfair or unconscionable means to collect or attempt to collect a debt.

234. (d) The Defendants violated California Civil Code Section 1788.17 by using deceptive means to collect or attempt to collect a debt from the Plaintiff.

235. The foregoing violations by Defendants result in violations of California Civil Code Section 1788.17.

236. The forgoing acts by Defendants were willful and knowing violations of the California Civil Code (FRDCPA), are sole and separate violations under California Civil Code Section 1788.30(b), and trigger multiple $1,000.00 penalties.

**SEVENTH CAUSE OF ACTION**

**VIOLATION OF DUE PROCESS - FAILURE TO PROMULGATE RULES REQUIRING A MEANINGFUL OPPORTUNITY TO BE HEARD, REASONED DECISION MAKING AND NOTICE OF DENIAL**

**(AGAINST ALL DEFENDANTS)**

237. Plaintiff re-alleges and incorporates by reference the above paragraphs as though set forth fully herein.

238. The Fifth Amendment to the United State Constitution commands the federal government: "No person shall. .. be deprived of life, liberty, or property, without due process of law."

239. HAMP is an entitlement program such that its benefits cannot be administered arbitrarily and without procedural due process. Procedural due process requires a meaningful opportunity to be heard within a process of reasoned decision making. Procedural due process requires meaningful notice of a specific reason why a person has been denied.

240. Procedural due process further requires an opportunity to correct mistakes, to review or appeal an adverse decision in a fair and impartial manner, as well as notice of such an opportunity.

241. Government entities administering entitlement programs such as Defendants are constitutionally obligated to provide program regulations, guidelines, or rules which comport with procedural due process.

242. Pursuant to the Fifth Amendment, Defendants are required to have promulgated regulations, guidelines or rules that require servicers of Defendants' mortgage loans or participants in the HAMP providing for a meaningful opportunity to be heard within a process of reasoned decision making; to provide a written notice stating the reason for denial and showing proper application of the "loss mitigation waterfall" and net present value

determination, as well as the procedure to appeal an adverse decision. Defendants failed to fulfill these requirements.

243. Plaintiff has incurred damages, and prays for remedies as outlined further in the section entitled "Prayer for Relief" enumerated below.

**EIGHTH CAUSE OF ACTION**

**VIOLATION OF DUE PROCESS**

**FAILURE TO PROMULGATE RULES REQUIRING**

**A RIGHT TO REVIEW OR APPEAL TO AN IMPARTIAL ARBITER**

**(AGAINST ALL DEFENDANTS)**

244. Plaintiff re-alleges and incorporates by reference the above paragraphs as though set forth fully herein.

245. The Fifth Amendment to the United State Constitution commands the federal government: *"NO* person shall... be deprived of life, liberty, or property, without due process of law ... " HAMP is an entitlement program such that its benefits cannot be administered arbitrarily and without procedural due process.

246. Procedural due process requires meaningful notice of the specific reason why a person has been denied, and, in order to be meaningful, procedural due process further requires an opportunity to correct mistakes or appeal an adverse decision as well notice of such an opportunity. Government entities administering entitlement programs such as Defendants are constitutionally obligated to provide program regulations, guidelines, or rules which comport with procedural due process.

247. Pursuant to the Fifth Amendment, Defendants are required to have promulgated regulations that create a uniform process to provide homeowners an unbiased and uniform process to evaluate and reverse adverse decisions related to HAMP and undo adverse actions, and provide a written decision related to the appeal. Defendants failed to fulfill these requirements.

248. Plaintiff has incurred damages, and prays for remedies as outlined further in the section entitled "Prayer for Relief" enumerated below.

**NINTH CAUSE OF ACTION**

**VIOLATIONS OF FAIR CREDIT REPORTING ACT**

**(AGAINST Wells Fargo Bank (Wachovia)BANK, N.A.)**

249. Plaintiff re-alleges and incorporates by reference the above paragraphs as though set forth fully herein.

250. At all times material, Wells Fargo Bank (Wachovia) qualified as providers of information to the Credit Reporting Agencies, including but not limited to Experian, Equifax, and TransUnion, under the Federal Fair Credit Reporting Act.

251. Wells Fargo Bank (Wachovia) wrongfully, improperly, and illegally reported negative information as to the Plaintiff to one or more Credit Reporting Agencies, resulting in Plaintiff having negative information on her credit reports and the lowering of her FICO score.

252. The negative information included but was not limited to an excessive amount of debt into which Plaintiff was tricked and deceived into accepting.

253. Pursuant to 15 USC §1681(s)(2)(b), Plaintiff is entitled to maintain a private cause of action against Wells Fargo Bank (Wachovia) for an award of damages in an amount to be proven at the time of trial for all violations of the Fair Credit Reporting Act which caused actual damages to Plaintiff, including emotional distress and humiliation.

254. Plaintiff is entitled to recover damages from Wells Fargo Bank (Wachovia) for negligent noncompliance with the Fair Credit Reporting Act pursuant to 15 USC §1681(o).

255. Plaintiff is also entitled to an award of punitive damages against Wells Fargo Bank (Wachovia)for their willful noncompliance with the Fair Credit Reporting Act pursuant to 15 USC § 1681(n)(a)(2) in an amount to be proven at time of trial.

256. Plaintiff has incurred damages, and prays for remedies as outlined further in the section entitled "Prayer for Relief" enumerated below.

**TENTH CAUSE OF ACTION**

**DEFENDANTS LACK STANDING IN ATTEMPTING TO CONDUCT A NON-JUDICIAL FORECLOSURE PURSUANT TO *CALIFORNIA COMM. CODE § 3301***

**(AGAINST Wells Fargo Bank (Wachovia)BANK, N.A.)**

257. Plaintiff re-alleges and incorporates by reference the above paragraphs as though set forth fully herein.

258. A promissory note is personal property and the deed of trust securing a note is a mere incident of the debt it secures, with no separable ascertainable market value. *California Civil Code §§ 657, 663. Kirby* v. *Palos Verdes Escrow Co.*, (1986) 183 Cal. App. 3d 57, 62.

259. Any transfers of the notice and mortgage fundamentally flow back to the Note:

260. "The assignment of a mortgage without a transfer of the indebtedness confers no right, since debt and security are inseparable and the mortgage alone is not a subject of transfer" *Hyde v. Mangan* (1891) 88 Cal 319; *Johnson v. Razy* (1919) 181 Cal 342; *Bowman v. Sears* (1923) 63 Cal App 235; *Treat v. Burns* (1932) 216 Cal. 216,

261. "A mortgagee's purported assignment of the mortgage without an assignment of the debt which is secured is a legal nullity." *Kelley V. Upshaw* (1952) 39 Cal. 2d 179.

262. "A trust deed has no assignable quality independent of the debt; it may not be assigned or transferred apart from the debt; and an attempt to assign the trust deed without a transfer of the debt is without effect." *Domarad v. Fisher & Burke, Inc.* (1969) 270 Cal.App.2d 543.

263. The Note is a negotiable instrument.

264. Transferring a Deed of Trust, by itself, does not allow enforcement of the instrument unless the Promissory Note is properly negotiated.

265. Where an instrument has been transferred, enforceability is determined based upon possession.

266. *California Commercial Code § 3301* limits a negotiable instrument's

enforcement to the following:

267. "Person entitled to enforce" an Instrument means (a) the holder of the instrument, (b) a non-holder in possession of the instrument who has the rights of a holder, or (c) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3309 or subdivision (d) of Section 3418. A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument."

268. Wells Fargo Bank (Wachovia) has only provided a copy of the Note and has failed to provide evidence that they are in possession of the "Instrument" (Original Note).

269. Wells Fargo Bank (Wachovia) has not demonstrated that they are non-holders in possession of the instrument who had rights of the holder.

270. Wells Fargo Bank (Wachovia) has failed to show they are entitled to enforce the instrument pursuant to California Commercial Code § 3309 or subdivision (d) of Section 3418.

271. Wells Fargo Bank (Wachovia) has no enforceable rights under *California Commercial Code 3301(a)* to enforce the negotiable instrument.

272. Since there was no right to enforce the negotiable instrument, the Notice of Default provisions of *California Civil Code § 2924* and Notice of Sale provisions of *California Civil Code § 2924f* were likewise never complied with, and there was no subsequent incidental right to enforce any deed of trust and proceed with a non-judicial foreclosure, as identified herein.

273. As a direct result of Wells Fargo Bank (Wachovia)'s acts, Plaintiff has incurred actual damages consisting of mental and emotional distress, nervousness, grief,

embarrassment, loss of sleep, anxiety, worry, mortification, shock, humiliation, indignity, pain and suffering, and other injuries.

274. Plaintiff has incurred damages, and prays for remedies as outlined further in the section entitled "Prayer for Relief" enumerated below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them as follows:

Plaintiff asks this Court to:

A. Declare Defendants conduct is a violation of procedural due process;

B. Enjoin Defendants and their agents, nominees, attorneys, employees, representatives or anyone acting in concert or participation with Defendants from conducting a nonjudicial foreclosure sale of Plaintiff's home, or taking any further steps in proceeding with nonjudicial foreclosure of the deed of trust securing the Loan, unless or until Defendants prove they are:

1. Promulgating regulations, guidelines, or rules that require that borrowers, such as Plaintiff, be given a reasonable opportunity to be heard concerning eligibility and qualifications for a loan modification under HAMP, and concerning the right of mortgage loan servicers, such as Wells Fargo Bank (Wachovia), to deny borrowers, such as Plaintiff, access to HAMP; and

2. Promulgating regulations, guidelines, or rules that require mortgage loan servicers, such as Wells Fargo Bank (Wachovia), to notify, in writing, that a homeowner, such as Plaintiff, has been denied access to participate in HAMP and the loan modification or loss mitigation programs offered by the servicer; and

3. Promulgating regulations, guidelines, or rules that require mortgage loan servicers, such as Wells Fargo Bank (Wachovia), provide a written decision stating the reason for denial, and showing proper application of the "loss mitigation waterfall;" and

4. Promulgating regulations, guidelines, or rules that require notice of an opportunity for the homeowner, such as Plaintiff, to appeal or provide additional information to a neutral decision-maker; and

5. Promulgating regulations, guidelines, or rules that require the disclosure of the factors and specific formula used to determine a "positive" or "negative" result by the net present value calculator;

6. Promulgating regulations, guidelines, or rules that provide a reasonable "opportunity for a homeowner, such as Plaintiff to appeal to an unbiased decision-maker; and

7. Afford Plaintiff Marshall Silvers all of the foregoing procedural due process.

C. Award all costs and attorneys' fees; and

D. Such further relief, including equitable relief, as the Court deemed appropriate.

E. Under all alternatives, Plaintiff prays:

1. That this Court grant judgment in favor of Plaintiff against all Defendants;

2. For all damages and remedies Plaintiff is entitled to recover;

3. For all damages and remedies Plaintiff is entitled to recover;

4. For judgment that Plaintiff is entitled to compensation of the full value of the Subject Property;

5. For compensatory damages according to proof, including lost credit, lost earnings and the employee benefits, medical expenses, emotional distress, humiliation, mental anguish, and the compensatory damages;

6. For general damages according to proof;

7. For special damages according to proof;

8. For interest on damages according to proof;

9. For prejudgment interest on such damages as provided by law;

10. For attorney fees incurred by Plaintiff;

11. For costs of suit incurred by Plaintiff; and

12. For such further relief as the court deems proper.

Dated: January 2, 2013

Marshall D. Silvers

Pro Se

RECEIVED
OFFICE OF GENERAL COUNSEL

60

PROOF OF SERVICE BY MAILING

I am over the age of 18 and not a party to the within action. I am employed by the Office of United States Attorney, Central District of California. My business address is 300 North Los Angeles Street, Suite 7516, Los Angeles, California 90012.

On March 14, 2013, I served NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT BY FEDERAL DEFENDANTS on each person or entity named below by enclosing a copy in an envelope addressed as shown below and placing the envelope for collection and mailing on the date and at the place shown below following our ordinary office practices. I am readily familiar with the practice of this office for collection and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

Date of mailing: March 14, 2013. Place of mailing: LOS ANGELES, CALIFORNIA. **Person(s) and/or Entity(ies) to Whom mailed:**

Marshall Dennis Silvers, Pro se
5442 Crebs Avenue
Tarzana, CA 91356

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on: March 14, 2013 at Los Angeles, California.

Olivia Murillo

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself [ ] )
MARSHALL DENNIS SILVERS, an individual

**DEFENDANTS** ( Check box if you are representing yourself [ ] )
SEE ATTACHED

(b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Marshall Dennis Silvers
5442 Crebs Ave.
Tarzana, CA 91356

(b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
ANDRÉ BIROTTE JR., U.S. Attorney
LEON W. WEIDMAN, AUSA, Chief, Civil Division
RUSSELL W. CHITTENDEN, AUSA (213) 894-2444
300 N. Los Angeles Street, Suite 7516, Los Angeles CA 90012

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

- [ ] 1. U.S. Government Plaintiff
- [ ] 3. Federal Question (U.S. Government Not a Party)
- [X] 2. U.S. Government Defendant
- [ ] 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business in this State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business in Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. ORIGIN** (Place an X in one box only.)

- [ ] 1. Original Proceeding
- [X] 2. Removed from State Court
- [ ] 3. Remanded from Appellate Court
- [ ] 4. Reinstated or Reopened
- [ ] 5. Transferred from Another District (Specify)
- [ ] 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** [ ] Yes [X] No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** [ ] Yes [X] No [ ] **MONEY DEMANDED IN COMPLAINT: $** ____________

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. SECTION 1442

**VII. NATURE OF SUIT** (Place an X in one box only).

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce/ICC Rates/Etc.
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced & Corrupt Org.
- [ ] 480 Consumer Credit
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Info. Act
- [ ] 896 Arbitration
- [ ] 899 Admin. Procedures Act/Review of Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loan (Excl. Vet.)
- [ ] 153 Recovery of Overpayment of Vet. Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment

**REAL PROPERTY CONT.**
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [X] 290 All Other Real Property

**TORTS**
**PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Fed. Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury-Med Malpratice
- [ ] 365 Personal Injury-Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**TORTS**
**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accomodations
- [ ] 445 American with Disabilities-Employment
- [ ] 446 American with Disabilities-Other
- [ ] 448 Education

**PRISONER PETITIONS**
**Habeas Corpus:**
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

**Other:**
- [ ] 540 Mandamus/Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Mgmt. Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Ret. Inc. Security Act

**PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 840 Trademark

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405 (g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405 (g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS-Third Party 26 USC 7609

FOR OFFICE USE ONLY: Case Number: CV13-01854

AFTER COMPLETING PAGE 1 OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED ON PAGE 2.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? [X] NO [ ] YES

If yes, list case number(s): ______

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? [X] NO [ ] YES

If yes, list case number(s): ______

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)
[ ] A. Arise from the same or closely related transactions, happenings, or events; or
[ ] B. Call for determination of the same or substantially related or similar questions of law and fact; or
[ ] C. For other reasons would entail substantial duplication of labor if heard by different judges; or
[ ] D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

[ ] Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

[X] Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**NOTE: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES | |

***Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
**Note:** In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** [signature] DATE: 3/14/13

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

ANDRÉ BIROTTE JR.
United States Attorney
LEON W. WEIDMAN
Assistant United States Attorney
Chief, Civil Division
RUSSELL W. CHITTENDEN
Assistant United States Attorney
California State Bar No. 112613
Room 7516, Federal Building
300 North Los Angeles Street
Los Angeles, California 90012
Telephone: (213) 894-2444
Facsimile: (213) 894-7819
Email: russell.chittenden@usdoj.gov

Attorneys for Federal Defendants
Timothy F. Geithner, United States
Secretary of the Treasury and
The Federal Housing Finance Agency

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MARSHALL DENNIS SILVERS, an individual,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, NATIONAL ASSOCIATION, a nationally chartered bank; WACHOVIA MORTGAGE CO.; CALIFORNIA RECONVEYANCE COMPANY, an unknown entity; TIMOTHY F. GEITHNER, as United States Secretary of the Treasury; THE FEDERAL HOUSING FINANCE AGENCY, as conservator for the Federal National Mortgage Association; and DOES 1 through 50, inclusive, | NO.<br><br>NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT BY FEDERAL DEFENDANTS<br><br>[28 U.S.C. § 1442] |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Christina A. Snyder and the assigned discovery Magistrate Judge is Stephen J. Hillman.

The case number on all documents filed with the Court should read as follows:

**CV13- 1854 CAS (SHx)**

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

---

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[✓] Western Division
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] Southern Division
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] Eastern Division
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.